## STATE v. WORKMAN.

1. HOMICIDE—FIRST ASSAULT.—In response to defendant's request, that "where it is uncertain which party first made the assault, the State must prove, to the exclusion of a reasonable doubt, that it was the defendant," the trial judge did not err in charging, "if that is a question of fact which it is essential that you pass upon, certainly the State must prove that fact, as it proves all other facts, beyond a reasonable doubt." MR. JUSTICE POPE *dissenting*.

2. GENERAL EXCEPTIONS need not be considered, but considered here *in favorem vitæ*, it was determined that the judge did not charge as alleged.

3. WORDS NOT A PROVOCATION.—Mere words do not constitute sufficient legal provocation.

4. HOMICIDE—CHARGING JURIES—BIBLICAL OFFENCES.—Where counsel for defendant called the attention of the jury to the "higher law" of the Bible as to the offences of murder and manslaughter, the trial judge did not commit error of law in further calling their attention to the institution of cities of refuge in the 21st chapter of Exodus, and to the character of the homicides which were deemed so far excusable as to require these places to afford protection to the slayer of his fellow-man.

5. IBID.—IBID.—After telling the jury what the form of their verdict should be if they found the defendant guilty of murder or of manslaughter, or not guilty, and that they were a mere instrumentality of justice, the trial judge concluded his charge by saying: "You write your verdict, and let the consequences be where they belong." *Held*, that no error was committed.

6. AN EXCEPTION to a charge, not sustained by the charge as reported, overruled.

7. HOMICIDE—INTENT—MOTIVE.—Where a homicide has been committed, the State must prove the intent of the accused to justify a conviction of murder or manslaughter, but it is not necessary to prove a motive for the crime, as that is ofttimes secret and impossible of proof.

8. MANSLAUGHTER—DEFINITION.—After charging what manslaughter was in the words of the statutory definition, there was no error in further explaining the elements of manslaughter by illustrations not inconsistent with this statutory definition.

Before ALDRICH, J., Newberry, July, 1892.

Indictment against Amanda Workman for the murder of Nora Simpson on November 12, 1891. The charge of the judge to the jury, so far as it has any bearing upon the exceptions taken, was as follows:

The defendant requests me to charge (sixth): "That there must be a motive for the commission of the crime and there must be a criminal intent—it is incumbent upon the State to establish both the motive and the intent, in order to obtain a verdict." That I refuse to charge to you. It is not law in this State, so decided by the Supreme Court expressed in the case against a man who killed a woman in the South Carolina College yard—I have forgotten the name of the man.[1] It is incumbent upon the State to prove that the party acted with malice, committed the deed with malice aforethought. If the State can prove the motive, it is but right and proper that the State should prove it as tending to show whether the person acted with malice or not, but malice and motive are entirely distinct and separate one from the other. A person may kill another, and the motive which prompted him may remain a secret locked in his or her breast, and be carried to his or her grave with them; but if the State proves that that person did kill and murder some one else, and did it with malice, that is all that the law requires. It should prove the motive if it can, but it is not absolutely necessary that the State must prove the motive, and so I charge you.

The next grade of homicide is manslaughter. That is the killing of a person without malice. Manslaughter is a crime. It does not turn the person loose and let him go at large, but the person who is guilty of manslaughter is guilty of a crime and punished. The distinction between murder and manslaughter is that in murder the killing is done with malice, and in manslaughter it is done without malice. That is what separates, differentiates. That definition would not help you very much, and I will charge you further: Manslaughter is the killing of a person in sudden heat and passion upon sufficient legal pro-

[1]See *State* v. *Coleman*, 20 S. C., 441.

vocation. Let us apply this rule to this case in a general way. Reversing it, so to speak, the order of the definition is: did Nora, the dead woman, if you think she is dead, or any one with her, give this defendant a legal provocation?

What is a legal provocation? It is very hard to define it. I can tell you, though, that words are never a legal provocation. A man or woman may curse another in the vilest manner, using the most abusive language, and yet that in law is no legal provocation. A legal provocation means some injury or, at least, some indignity offered to the person of another. I can illustrate: If one of you gentlemen were on the street, and you meet up with some man, and he spits in your face, or strikes you with a small walking-cane, or takes his glove and curses you and slaps you in the face at the same time, intending to strike your person in a rude, angry or resentful manner, or to humiliate you, that in law would be a legal provocation. Why? Because men are, after all, mere human beings, and subject to the infirmities of human persons, and such a provocation is apt to bring about a great transport of heat and passion upon the moment, and because it is human nature, the law recognizes that a person is liable to get into a great heat and passion. Now, then, did Nora give this defendant any legal provocation? Did she touch her person in a rude, angry or resentful manner, or did she commit or attempt to commit an assault upon her, or anything of that sort? Those are questions entirely for you to consider.

If this defendant had no legal provocation to kill Nora, and you find that she did kill her, then it cannot be manslaughter, because the basis of manslaughter is that it is done in sudden heat and passion upon sufficient legal provocation. If you find there was legal provocation, your next inquiry will be, if she took the life of the deceased, did this defendant do it from a sudden heat and passion, was she then laboring under a transport of passion—that angry, wild feeling that rushes to your head when reason for the moment is set aside—when a person acts from the instinct of passion and not from the reason and thought of the brain? If she did, and had a legal provocation, and she took the life of the deceased, she did it then from heat

and passion, and not from malice, and it would be manslaughter and not murder.   The question of fact is, was she in great heat and passion?  If she was, and she had legal provocation and took her life, then it was manslaughter; but if she was not in any great heat and passion, and there was no legal provocation, then it was not manslaughter, but a higher crime—murder.

A person may be in heat and passion from a legal provocation, and it is well to fix the time when that legal provocation is given which justifies, or rather excuses, this heat and passion, if the legal provocation has been given.   If the deceased in this case, if you find that she is dead, did give this defendant a legal provocation, when was it?   How long was it before this defendant took her life, if she did take it?   If it was a time so long before the actual killing, if there was a killing, that this defendant cooled off and the transport of passion had passed away; if the clouds which obscured the sunlight had drifted by, and reason had come back and she was cool; if, I say, she cooled off· from that legal provocation, then the legal provocation would not reduce the offence; it could not be manslaughter, because there would not be the heat and passion.

Now some people might argue that a person, offended and thrown into a heat and passion, would remain so a long time, possibly weeks; but that is not the rule of the law.   In judging whether a person acted from heat and passion, you judge two things—first, the abstract question, did she act under this transport of sudden heat and passion, if she acted at all, or was she cool?   And second, the law judges of everybody brought to that bar by the rules which govern and control persons of ordinary prudence and intelligence, and if a sufficient time elapsed by which a person of ordinary intelligence and firmness of character would have cooled off, then no matter whether the person got cool or not, the law treats that person as a cool person, because every one in law is presumed to have gotten over the anger, the heat and passion, in the time in which a person of ordinary discretion and sense and feelings would have gotten over them.   That relates to manslaughter.

The next grade of homicide is self-defence, and the counsel requests me to charge (second): "That where it is uncertain

which party first made the assault, the State must prove, to the exclusion of a reasonable doubt, that it was the defendant." I don't exactly understand what is meant by that. If he means— and he will please see if I am correct—that it is incumbent upon the State to prove beyond a reasonable doubt that it was the defendant here, the party upon trial, who first began the assault, first started the fuss, very well; if that is a question of fact, which it is essential that you pass upon, certainly the State must prove that fact, as it proves all other facts, beyond a reasonable doubt.     *     *     *  .

I believe that covers pretty much the law, but the learned counsel for the defence quoted from the pages of the Bible what he said was higher law. Well, it is a higher law in one sense. It is higher, because it comes from the King above, who rules this world together with others; but we are here as human instrumentalities, endeavoring to carry out the laws of the State of South Carolina. Now, I have studied my Bible to some extent—not a great deal—and being a lawyer, and with a mind tending to legal studies, I have discovered that my friend, if he had turned his book to the 21st chapter of Exodus and read a little passage there, would have found that the law of God and the law of South Carolina are exactly the same. You remember, that it is told in the Bible that in olden times there were cities of refuge, where a man, if he slew his fellow-man, might flee, and the avenger of human blood could not take him. Those places of refuge were the sanctuary, the temples of those days, and the man who had slain his fellow-man might hide under the shadow of the altar; but my friend forgets one distinction, that the Author and Maker of this law described what class of men, who had taken the lives of their fellow-men, should find protection under the wings of the altar, and here it is: "He that smiteth a man so that he die, shall be surely put to death. And if a man lie not in wait" (that is, if the man does not prepare to kill his man), "but God deliver him into his hand, then I will appoint thee a place whither he shall flee." That means, that if a man commits the offence of manslaughter, kills his fellow-man without malice, he is entitled to the protection of the sanctuary, and the laws of

South Carolina afford him the same protection. But, in the next place, it is said: "But if a man come presumptuously upon his neighbor, to slay him with guile, thou shalt take him from mine altar, that he may die." So that the law of God is the same as the law of this State; if you try by the higher law in the olden day, the man who had killed his neighbor with malice, and hid himself under the very shadow of the altar, according to the Jewish Mosaic dispensation, the officers of the law would go and take him out of the temple, and he would be put to death in the appointed way. So that the learned counsel, when he appeals to a higher law, does not, however, appeal to one any higher than in this State; but, as I said, you and I are controlled by the law of South Carolina and nothing else.

If you find that this defendant is guilty of murder, say so; if guilty of manslaughter, say so. If the State has failed to prove either of these offences, your verdict will be "not guilty." You try this case according to the evidence and the law, and as an instrumentality, as a hand of justice which guides the pen that inscribes her edicts, you write your verdict, and let consequences be where they belong.

*Messrs. Blease & Blease*, for appellant.

*Mr. Schumpert*, solicitor, contra.

April 18, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. While I concur in the conclusions reached by Mr. Justice Pope upon all of the other grounds of appeal, I cannot agree with him in the view which he takes of the third and fourth grounds. The point there made, as I understand it, is that the Circuit Judge erred in declining to charge, without qualification, that it was incumbent upon the State to prove, beyond a reasonable doubt, that the defendant made the first assault or commenced the difficulty; and the particular complaint made is that the Circuit Judge, in giving that instruction, interposed the words: "If that is a question of fact which it is essential that you pass upon," the appellant contending that those words should not

have been interposed, but that the jury should have been told, without qualification, that it was incumbent upon the State to prove, beyond a reasonable doubt, that the defendant made the first assault or commenced the difficulty.

To sustain this position, it would be necessary to assume that in no case could a defendant be convicted of murder, or even of manslaughter, unless the jury were satisfied beyond a reasonable doubt that the accused made the first assault or commenced the difficulty. Such an assumption is not, in my opinion, well founded. While it is quite true that in many cases the question as to who made the first assault or commenced the difficulty is a material inquiry, yet it is not so in *all* cases. For example, besides other illustrations which might be used, if a trivial assault is made upon one person by another, and the person so assailed draws a deadly weapon and uses it with fatal effect, there can be no doubt that he would be guilty of manslaughter, at least; and the fact that the deceased committed the first assault would be wholly insufficient to reduce the case to one of self-defence. In such a case, therefore, the question as to who committed the first assault would not be material. Hence I do not think it would be correct to say that in every case the jury must be satisfied beyond a reasonable doubt that the accused committed the first assault or commenced the difficulty, before he can be convicted of any offence; but that the true rule is that, where the question as to who commenced the difficulty is a material inquiry, it is necessary that the jury should be satisfied beyond a reasonable doubt that the accused was the aggressor before he can be convicted, just as they must be satisfied of every other material fact in the case. It seems to me that the charge of the Circuit Judge was precisely in accordance with this rule, and, therefore, not erroneous. Whether the facts of this particular case were such as to make the inquiry whether the accused was the aggressor material, was a question for the jury, which the Circuit Judge had no right to consider, and hence they were correctly instructed, that if they believed that such facts rendered it necessary to inquire who was the aggressor, then the State was bound to prove beyond a reasonable doubt that the defendant was the aggressor. I think, therefore,

that the judgment of the Circuit Court should be affirmed, and this being the opinion of the majority,

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that court for the purpose of having a new day assigned for the execution of the sentence heretofore imposed.

MR. JUSTICE MCGOWAN concurred.

MR. JUSTICE POPE *dissenting*. The appellant having been convicted of murder, now questions such conviction in the following particulars, as embodied in her grounds of appeal:

1. Because the presiding judge refused to charge, as requested, "That there must be a motive for the commission of the crime and there must be a criminal intent; it is incumbent upon the State to establish both the motive and the intent, in order to obtain a verdict."

2. Because the presiding judge erred in charging the jury as follows: "Manslaughter is the killing of a person in sudden heat and passion upon sufficient legal provocation."

3. Because the presiding judge erred in charging the jury as follows: "That it is incumbent upon the State to prove beyond a reasonable doubt that it was the defendant here, the party on trial, who first began the assault, first started the fuss; if that is a question of fact, which it is essential that you will pass upon, certainly the State must prove that fact, as it proves all other facts, beyond a reasonable doubt."

4. Because the presiding judge refused to charge as requested: "That when who first assailed is uncertain, the State must prove, to the exclusion of a reasonable doubt, that it was the defendant."

5. Because the presiding judge erred in charging: "I have discovered that my friend, if he had turned back to the 21st chapter of Exodus and read a little passage there, would have found that the law of God and the law of South Carolina are exactly the same. You remember, gentlemen, that it is told in the Bible that in olden times there were cities of refuge, where a man, if he slew his fellow-man, might flee, and the avenger of human blood could not take him. These

places of refuge were the sanctuary, the temples of those days, and the man who had slain his fellow-man might shield himself under the shadow of the altar, but my friend forgets one distinction, that the Author and Maker of this law described what class of men, who had taken the lives of their fellow-men, should find protection under the wings of the altar, and here it is: 'He that smiteth a man so that he die, shall be surely put to death. And if a man lie not in wait' (that is, if the man does not prepare to kill his man), 'but God deliver him into his hands, then I will appoint thee a place whither he shall flee.' That means, if a man commits the offence of manslaughter, kills a fellow-man without malice, he is entitled to the protection of the sanctuary, and the laws of South Carolina afford him the same protection. But in the next place it is, 'But if a man comes presumptuously upon his neighbor to slay him with guile, thou shall take him from my altar, that he may die.' "

6. Because the presiding judge erred in charging: "You write your verdict, and let the consequences be where they belong."

7. Because the presiding judge erred in intimating to the jury his opinion on the question of fact as to the guilt of the defendant.

8. Because the presiding judge erred in charging as follows: "I can tell you, though, that words are never a legal provocation."

9. Because the presiding judge erred in charging in effect that words could not cause sudden heat and passion.

The ninth ground of appeal is too general, and under strict practice is not entitled to be considered, but in view of the gravity of the case we have searched the entire charge of the presiding judge to discover if it was subject to this objection, and we fail to find that the judge even in effect charged as here complained.

The eighth ground of appeal, which has been presented both earnestly and ably by appellant's counsel, cannot be sustained.

It is at variance with the law to hold that mere words constitute legal provocation. Two recent cases of our

own court have so decided.  *State* v. *Jacobs,* 28 S. C., 34; *State* v. *Jackson,* 32 *Id.,* 43.

As to the fifth ground of appeal, which complains that the Circuit Judge referred to the Bible to justify the law of this commonwealth on the subject of the punishment accorded to the offences of murder and manslaughter, we are not able to agree with the appellant.  By reference to the charge of the judge, it seems that the quotations from the Bible made by him were in answer to an appeal in the argument of defendant's counsel to a "higher law" which he claimed the Bible sustained.  Certainly no harm was intended or accrued to the prisoner on that account.

The sixth ground of appeal refers to the closing words of the judge's charge to the jury, and by reference to the "Case," the alleged objectionable words are only a part of a sentence which, when examined as a whole, is entirely free from exception.

The seventh ground of appeal is not sustained by the "Case." We fail to find that the judge in his charge allowed any expression to fall whereby he conveyed to the jury his impression as to the facts of the case.

The first ground of appeal is not sound in law; for while it is true that the intent is of the essence of the crimes of murder or manslaughter, and it is essential that the intent must be proved, it is not true that the motive of a defendant in crime should be proved.  Frequently the motive of the criminal dies with him.  It is the secret spring in the mind whose location is impossible in many cases.  Of course, if known it may be proved, yet the failure to lay it bare in the trial of a criminal does not present any trouble in sustaining a conviction in absence of such proof.

The second ground of appeal assails the correctness of the definition by the Circuit Judge of the crime of manslaughter. He held as follows: "The next grade of homicide is manslaughter.  That is the killing of a person without malice.  Manslaughter is a crime.  It does not turn the person loose and let him go at large, but the person who is guilty of manslaughter is guilty of a crime and is punished.

The distinction between murder and manslaughter is, that in murder the killing is done with malice, and in manslaughter it is done without malice. That is what separates, differentiates. That definition would not help you very much, and I will charge you further: manslaughter is the killing of a person in sudden heat and passion, upon sufficient legal provocation.'' Complaint is made of this definition by the judge, that it is not in the words of our statute referring to this offence. When we examine the charge of the presiding judge as found in the ''Case,'' it will be seen that at first he uses nearly the exact language of our statutory definition of the offence. But in order that the jury may be able to apprehend the language first used, the Circuit Judge afterwards shows how malice may be absent or, in other words, how the adjudicated cases on this subject allow the absence of malice to be established, viz: the absence of malice may be said to be established when the homicide is committed in sudden heat and passion, and upon a sufficient legal provocation. This upon an investigation will be found to be a correct presentation of the elements of manslaughter.

The third and fourth grounds of appeal will be considered together. They present the serious question in the case. The defendant requested the presiding judge to charge, that when it is uncertain who committed the first assault, then it is the duty of the State to prove beyond a reasonable doubt that it was the defendant. Unquestionably it is law, that when the facts of a difficulty which ended in the defendant taking the life of the deceased are brought out in testimony, and it there appears that both parties participated in the violence, the State should prove that the defendant was the assailant in the first instance, in order to warrant a conviction of murder. The defendant having made a request of the judge to charge this as a proposition, she was entitled to have this done. The ''Case'' does not show that the charge of the presiding judge was directly responsive to this request. And in this, we fear, there was error. The object of requests to charge is to obtain from the presiding judge a direct response to such request; not in the language of the request nor in the form

presented, but still there must be a response of the judge to the point presented. This is his language: "I don't exactly under-stand what is meant by that. If he means—and he will please see that I am correct—that it is incumbent upon the State to prove beyond a reasonable doubt that it was the defendant here, the party upon trial, who first began the assault, first started the fuss, very well; *if that is a question of fact which it is essential for you to pass upon* (italics ours), certainly the State must prove that fact, as it proves all other facts, beyond a rea-sonable doubt." Thus it will be seen the Circuit Judge having begun his reference to this request by an expression of a doubt as to his apprehension of it, and afterwards using words show-ing a doubt whether the jury had to pass upon the facts under-lying this request, we fear that he unwittingly prejudiced this most serious right of the woman who was on trial for her life; and because of this error there must be a new trial ordered.

Judgment affirmed.