**AUTOMOBILE INS. AGENCY, INC.,**
**v LLOYD**

Common Pleas, 2nd Dist.,

Franklin Co.

No. 158,564. Decided April 4, 1941.

Tallentire & Barner, Cincinnati, William R. Meier, Cincinnati, for plaintiffs.

Thos. J. Herbert, Atty. Gen., Columbus, David M. Spriggs, Asst. Atty. Gen., Paul M. Gingher, Special Counsel, Columbus, George P. Bickford, Special Counsel, Cleveland, for defendant.

## OPINION

By LEACH, J.

This is an appeal, pursuant to §644 GC, invoking a review of the action of the Superintendent of Insurance in revoking and later in refusing to grant insurance agents' licenses to plaintiffs.

The appeal involves the construction of said §644 GC, and its application to the facts, which are not seriously in dispute, and which have been summarized in the statements of fact contained in the briefs both of plaintiffs and defendant. Since there is no substantial controversy as to the facts which are well known to the parties and to counsel, the Court will not extend this opinion by including any formal statement of facts, but may refer to certain of them in this decision.

A motion to dismiss the appeal was filed on the ground that no notice of appeal has been given the defendant as is claimed to be required by §12223-4 and 12223-5 GC.

Section 12223-3 GC, reads:

"Every final order, judgment or decree of the court and, when provided by law, the final order of any administrative officer, tribunal, or commission may be reviewed as hereinafter provided, unless otherwise provided by law, except that appeals from judgments of justices of the peace upon questions of law and fact shall be taken in the manner now provided for in §§10382 to 10398 GC, inclusive." (Emphasis ours.)

Section 12223-4 GC, provides that,

"The appeal shall be deemed perfected when written notice of appeal shall be filed with the lower court, tribunal, officer or commission. * * *"

Section 12223-8 GC, in furtherance of the method of appeal provided by said appeals Code, provides:

"Within ten days after filing the notice of appeal, or the order allowing the appeal or a certified copy thereof, where permission to file the appeal is required, the clerk of the court from which the appeal is taken or a judge thereof, shall, upon being paid the lawful fees and the filing of a praecipe therefor, prepare and file in the court to which the appeal is taken, a transcript of the docket or journal entries, with such original papers or transcripts thereof as are necessary to exhibit the error complained of. The transcript of the testimony or bill of exceptions or so much thereof as may be necessary for said appeal may be filed within such time as is provided for in the rules of court. In the event the transcript and papers are not filed within said time either party may apply to the court to which the appeal is taken

to have the case docketed and the court shall order them filed."

Said section provides machinery for appealing from one court to a higher court, but makes no similar provisions for appeals from the action of the Superintendent of Insurance to this Court, so that under the appeals code no way is provided therein for carrying out or completing the scheme of appeal, provided for in said code, if attempted to be applied to an appeal from the Superintendent of Insurance.

Section 644, on the other hand, is complete in itself, by reason of its provision that, "Said cause shall proceed as a new civil action."

The conclusion of the court is that the provisions for appeal in said Section 644 GC, are included in those referred to in §12223-3 GC, by the exceptions therein contained to the general applicability of the appeals code as embodied in the phrase "unless otherwise provided by law".

For cases sustaining this conclusion by analogy, see Saslow v Weiss, 133 Oh St 496, wherein the court re-stated the old rule of construction that repeals by implication are not favored and held that "Municipal Court acts which prescribe a method of appeal on questions of law and fact to the Court of Common Pleas are exempt in such particular from the operation of the new appellate Procedure Act (§12221-1, et seq, GC)."

See also Committee v Bowsher, 132 Oh St 599, 600, where, in a per curiam, the court said:

"The new appellate Procedure Act (H. B. No. 42; 116 Ohio Laws, 104) repealed §§12223 to 12282, inclusive, GC, relating generally to proceedings in error, and amended the sections relating to review of orders of the Public Utilities Commission, State Tax Commission and State Director of Health, but that act did not amend or repeal the sections relating to review of orders of the Industrial Commission or the Division of Film Censorship.

"It is therefore apparent that the General Assembly intended that the review statutes which pertained to the two last named administrative boards, and which were in effect when the new appellate Procedure Act was passed, should continue to prescribe the procedure."

The provisions relating to review of the action of the Superintendent of Insurance in granting, revoking, renewing or refusing to grant, revoke or renew agents' licenses, came into §644 GC, by way of amendment (116 O. L. 240) passed May 1, 1935, effective August 21. 1935.

The Appellate Code was enacted April 4, 1935, by the same General Assembly that enacted amended §644; it was provided, however, that the appeals code should become effective January 1, 1936. The Appellate Code, therefore, was passed before the amendment to §644, but did not take effect until after the amendment to §644 took effect. This circumstance strengthens the conclusion that appeals under §644 should be governed by the appeal provisions of that section, and not by the general provisions of the Appellate Code.

Motion to dismiss appeal, denied.

### NATURE OF THE APPEAL

The briefs contain much discussion of the nature of the appeal, whether it is a trial de novo, as

was contemplated by the old significance of the word "appeal", or whether the appeal is in the nature of the old proceeding in error.

Amended 644 provides that "Said cause shall proceed as a new civil action with the right of either party to submit evidence, etc. Two indicia are apparent from this language; first, the cause shall proceed as a new civil action; and, second, the language is "with the right of either party to submit evidence"—not additional evidence.

A proceeding in the nature of an error proceeding pre-supposes that the court may consider only the record and the evidence which was before the lower court or tribunal, or, at least, that the evidence before the lower tribunal be brought before the reviewing court; if the review is limited to the nature of an error proceeding, such review provisions would of necessity contain some statutory machinery for bringing such record and evidence before the reviewing court, and if no such statutory machinery exists, it must follow, that the contemplated nature of the appeal is that of a new de novo proceeding and not that of an error proceeding.

As we have already seen, §12223-8 makes no such provision applicable to an appeal from the Superintendent of Insurance; §644 makes no such provision; we know of no statutory provision, and none has been called to our attention authorizing the Superintendent to sign and allow a bill of exceptions or otherwise to certify a transcript so as to get the record and evidence taken before him before the reviewing court.

The fact that, by agreement of the parties, transcripts of the stenographic notes of the evidence taken before the Superintendent is, for the convenience of the parties and to shorten the court hearing, submitted to the court, in lieu of having the witnesses testify all over again, does not make such transcripts, officially or legally a bill of exceptions, or change the nature of such transcripts in any way. True, the statute says that the "action of the Superintendent * * shall be subject to review by appeal to the Court of Common Pleas of Franklin County", but there is nothing to indicate that the action of the Superintendent shall be reviewed on the record before the Superintendent. The record and evidence before the Superintendent and the record and evidence before the Court might be substantially different. This being true, the character of the so-called review, is spelled out by the machinery provided by the statutes to get the evidence before the Court, and also by the omission of the statutes to make any provision to afford the reviewing Court any statutory opportunity to review the record and evidence before the Superintendent upon which he based his decision. The submission of the same by way of stipulation, as before observed, can not transform it into a status such as would exist if it were brought before the court pursuant to a statute and in the method therein provided. No such statute seems to exist; the nature of the review deducible from the statutes can not be changed by the voluntary stipulation by counsel as to the method of submitting the evidence.

## CONSTRUCTION AND APPLICATION OF §644 GC, TO THE FACTS OF THE CASE.

Before said section was amended in 1935 (116 O. L. 240) the statute as regards to the qualification

of agents and the purported discretion of the Superintendent in appointing them, provided (107 O. L. 699) that, "Upon written notice by an insurance company authorized to transact business in this state of its appointment of a person to act as its agent the Superintendent of Insurance shall, if he is satisfied that the **appointee is a suitable person**, and intends to hold himself out in good faith as an insurance agent, issue to him a license which shall state", etc.

It will be noticed that the statute as it formerly read contained no definition whatever as to what constitutes a "suitable person"— and fixed no standard by which suitability was to be measured. No yardstick was placed in the hands of the Superintendent by which he was informed as to legislative intent.

In the amended statute, however, after the words of the original statute: "IF he is satisfied that the appointee is a suitable person and intends to hold himself out in good faith as an * * agent", the comma following the word "agent" has been changed to a colon, and the following language thereafter inserted: "that appointee is honest, trustworthy and understands the duties and obligations of an agent and is familiar with the insurance laws of the state and with the terms and provisions of the policies and contracts of insurance he proposes to effect; that in applying for such license it is not appointee's purpose or intention principally to solicit or place insurance on appointee's own property or that of relatives, employers or employees or that for which they or the appointee is agent, custodian, vendor, bailee, trustee or payee, shall" issue to * * appointee a license, etc.

At the same time the statute was further amended by the insertion of the following language: "Such appointee, if he **has not theretofore held a license** as an insurance agent in this state, shall be required to submit to a hearing and examination **as to the above qualifications.**"

It is clear, therefore, that in the present statute the words "suitable person" are limited and defined by the enumerated qualifications so specifically set forth, and that no further or added qualifications may be required by the licensing authority.

The record shows that the plaintiffs were licensed, before the revocation of their licenses; of course this would necessarily be true. And at the time they were licensed, it must be assumed that they were found to have all the statutory qualifications, and that they continue to have such of said qualifications, except as otherwise found by the revocation order and the later order refusing to renew.

The order of revocation contained a finding of facts upon which the finding of unsuitability was based, and the later order found that certain changes have been made in the method of operation of the Automobile Insurance Agency, Inc., since the hearing held July 24, 1939, to determine its suitability. The finding continues:

"Said changes have been insufficient in the opinion of this office **and do not change the underlying character of the operation.** Although said agency is a separate corporation, it continues to be an adjunct of and controlled by the **Cincinnati Automobile Club** and that in all material respects the findings appearing in the order of this division entered August

15, 1939, are applicable to the present method of conducting the business by said agency. It is the furthe findings appearing in the order said agency is and for some time has been acting as agent for the American Motorists Insurance Company of Chicago and Grain Dealers' National Mutual Insurance Company of Indianapolis, Indiana, without being licensed as an agent for said companies in violation of §644 GC.

"In view of the foregoing, it is the finding of this Division that Automobile Insurance Agency, Inc., and Edward Bernard, as a constituent member of said agency, are unsuitable to be licensed as representatives for the sale of automomobile insurance."

Relative to the finding that Automobile Insurance Agency has been acting as agent for American Motorists Insurance Company of Chicago and The Grain Dealers' National Insurance Company of Indianapolis, Indiana, without being licensed so to do by the Ohio Insurance Division, it appears that the acting as an agent for said companies was for business transactions outside of Ohio, only; that plaintiffs contend that §644 GC, does not require such a license, but that, nevertheless, plaintiffs are willing to comply with the Insurance Division's interpretation of the law in this regard by causing proper applications to be made which were rejected as shown by stipulation.

It appears that Automobile Insurance Agency, Inc., the plaintiff, is a corporation for profit, is a successor corporation to Automobile Insurance Agency, a corporation not for profit, which in turn was a successor to Cincinnati Automobile Club Insurance Exchange, a corporation not for profit.

The question for the Court's determination is whether in view of said changes as shown by the record said applicants are suitable persons to be licensed, that is:

(1) That they intend to "hold themselves out in good faith as insurance agents";

(2) that they are "honest and trustworthy";

(3) that they "understand the duties and obligations" of agents;

(4) are familiar with the insurance laws of the state";

(5) are familiar "with the terms and provisions of the policies and contracts of insurance" they "propose to affect";

(6) that it is not their purpose or intention principally to solicit or place insurance on their "own property or that of relatives, employers or employees, or that for which they or the appointee is agent, custodian, vendor, bailee, trustee or payee."

If they possess all of said qualifications, they are, under the statute, suitable persons entitled to licenses.

As heretofore pointed out the statute further provides that "such appointee, if he has not theretofore held a license as an insurance agent in this state, shall be required to submit to a hearing and examination as to the above qualifications."

Said plaintiffs have, as shown by the record heretofore held licenses as insurance agents in this state, and it must be assumed that their educational qualifications are as good now as when licenses were originally granted to them, and that therefore they understand the duties and obligations of agents, are familiar with the insurance laws of the state; and with the terms and provisions of the policies and contracts they propose to effect. The record shows, we

think, that they intend to hold themselves out in good faith as insurance agents, and from the whole record there is nothing to show that it is their purpose and intention principally to solicit or place insurance on their own property or that of relatives, employers or employees, or that for which they or the appointee is agent, custodian, vendor, bailee, trustee or payee.

There is only left, then, the question of whether they are "honest and trustworthy". As shown by the record there have been an instance or two of misleading advertising by the predecessor corporation and misleading "holding out" either by the agency or the Cincinnati Automobile Club. Assurances are given that such will not be repeated. In view of the entire record and the assurances given, we do not think that the record when taken in its entirety supports a conclusion that said plaintiffs are dishonest or untrustworthy. Of course, the Court would be naive if he did not recognize that the real crux or gist of this controversy is the alleged tie-up existing or alleged to exist between the plaintiff agency and the Cincinnati Automobile Club. It is alleged that the agency is still an "adjunct" of the Automobile Club. It is shown that the Automobile Club owns no stock in the Agency Corporation and that no one holds any stock of the Agency Corporation in trust or escrow for the Club. It is also shown that all of the stockholders of the Agency Corporation are directors of the Club with one exception, but that many of the directors of the Club are not stockholders of the Agency. It is also shown that on May 29, 1939, the holders of all the outstanding common stock of the Automobile Insurance Agency, Inc., entered into a written voting trust agreement with the present directors of said corporation, vesting the voting rights of said stockholders in said directors for a period of five years from the date of said contract, and that all the directors are either officers and/or trustees or legal counsel of the Cincinnati Automobile Club. There is a wealth of learning and a plethora of decided cases as to when courts will or will not disregard the fiction of corporate identity; the Court will not undertake to write a treatise on the subject or to review the authorities. For our purposes we refer only to one paragraph of the opinion in the case of Majestic Co. v Orpheum Circuit, 21 Fed. (2nd) 720, by the Circuit Court of Appeals of the Eighth Circuit, (Kenyon, Molyneaux, and Sanborn, JJ.,). In that opinion a very great number of cases are cited and from them the following rule is distilled:

(From Op., page 724):
"The corporation will be regarded as a legal entity as a general rule, and the courts acting cautiously and only when the circumstances justify it, will ignore the fiction of corporation entity, where it is used as a blind or instrumentality to defeat public convenience, justify wrong, or perpetrate a fraud, and will regard the corporation as an association of persons."

After the changes in method referred to in the finding of the Division of Insurance of June 8, 1940, were made, it is true that a certain relationship continues to exist between the agency and the Club, which the Division may believe, and have good grounds for believing ought not to exist; however, the Court can not say that thereby

any of the insurance statutes will be violated, the public inconvenienced, any legal wrong justified, or fraud perpetrated. To hold otherwise, it seems to the Court would be to impose a qualification upon the licensing of insurance agents not imposed by the statute. If such further qualification or limitation is to be imposed, it must be imposed by the legislative branch of the government rather than by an administrative branch or by the courts.

The Constitution so requires: "The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives * *." **Art. II, Sec. 1, Constitution of Ohio.** "The powers and authority of public officers are fixed and determined by law." 46 C. J. 1031. The qualification of insurance agents having been fixed by the statute, §644 GC, there is no power lodged in the Superintendent of Insurance to add to the qualifications therein enumerated. That official, like other officials and administrative boards and commissions, possesses no powers except such as are conferred by statute. **Commissioners v Public Utilities Comm., 107 Oh St 442; New Bremen v Public Utilities Comm., 103 Oh St 23.**

The Court is of the opinion, and so finds, that the licenses applied for by plaintiffs should be granted for the remainder of the license year expiring on the 30th day of June, 1941.