**MOTORS INSURANCE CORPORATION et,**
**Plaintiffs-Appellants, v. ROBINSON et, Defendants-Appellees.**

Common Pleas Court, Franklin County.

**Appendix "A"**

No. 4614. Decided March 22, 1951.

**OPINION**

By REYNOLDS, J.:

This case is before the court on defendants' demurrer to plaintiffs' petition.

In this action plaintiffs seek to enjoin the defendants from refusing to grant insurance agents licenses to persons nominated by Motors Insurance Corporation or from refusing to admit such persons to examination to determine their qualifications to be licensed as insurance agents or from refusing to renew insurance agents licenses held by the individual plaintiffs and those whom they represent, or from revoking licenses upon the ground that the principal use of such licenses has been, is, or will be to procure insurance covering solely the interests of persons, firms or corporations other than such licensees or their employees or employers in motor vehicles which such licensees or their employer, or employers, have sold or are selling.

The petition recites that Motors Insurance Corporation is a corporation, under the laws of the state of New York and engaged in the business of insuring against the risks of physical damage, to and theft of motor vehicles, and is conducting said business in the state of Ohio, among other places through licensed agents, who in the main are connected with the business of motor vehicle sales; that it has complied with all the laws of Ohio relative to foreign insurance companies, other than life, engaged in business of the kind herein described; that it was authorized to transact such business in Ohio by a certificate of authority issued to it by the division of insurance, Department of Commerce of the state of Ohio on May 9, 1940, which certificate has been renewed annually; that pursuant to such certificate Motors Insurance Corporation has transacted such insurance business in Ohio since September, 1948, as of which date agents appointed by it, were first licensed as insurance agents by said division of insurance, acting through the then superintendent of insurance of Ohio; that since said date 935 individuals and 247 corporations have been appointed by said Motors Insurance Corporation and licensed by said division of insurance as agents of said corporation in Ohio, and at the present time there are approximately 912 such individual agents and that all of said corporations and approximately 863 such individuals are either motor vehicle dealers or officers or employees of such dealers and are doing business in approximately 454 different locations in Ohio; that the remaining agents are employees of plaintiffs' branch offices in Ohio whose duties are substantially limited to receiving and forwarding

applications procured by other licensed agents, and that all of said agents have met all the qualifying requirements for the issuance and renewal of licenses to act as insurance agents as provided by §644 GC; that plaintiff, The Avondale Motor Car Company, is a corporation under Ohio laws, with its principal place of business in Cincinnati, and is a dealer in motor vehicles, and is also licensed to procure applications for insurance in Ohio, as agent of Motors Insurance Corporation, pursuant to license issued in September, 1948, by the superintendent of insurance, on the requisition of said Motors Insurance Corporation, which license was renewed on July, 1949, and is now in full force and effect; that plaintiff, Fred Kahn, is engaged in business as a dealer in motor vehicles, at Lebanon, Ohio, and holds a license issued by the state of Ohio, to procure insurance as agent of plaintiff; that plaintiff John L. Cashman is an employee of The Winders Chevrolet Company, an Ohio corporation, with its principal place of business in Columbus, where it is engaged in the business of dealing in motor vehicles, and that the said Cashman holds a license to procure applications of insurance as agent of Motors Insurance Corporation, pursuant to a license issued by the state of Ohio on the requisition of Motors Insurance Company, which said license is in full force and effect; that plaintiffs bring the action on behalf of themselves and the representatives of the class above described, who are similarly situated and who would be similarly affected by the threatened actions complained of, and that there is a community of interest among the plaintiffs and the other said representatives of Motors Insurance Corporation above referred to; that defendant Walter Robinson is the duly qualified and acting head of the division of insurance within the Department of Commerce of the state of Ohio, with the title of superintendent of insurance; that defendant Robert L. Moulton is the duly appointed and qualified director of commerce of the state of Ohio, and as such, authorized to exercise the powers vested by the laws of Ohio in said department, including all powers invested in the office of the superintendent of insurance; that the actions and threatened actions of which complaint is made herein have been and presumably will be taken and done in the name of the superintendent of insurance by defendant Walter A. Robinson under the authorization and with the approval of defendant Robert L. Moulton; that a very considerable proportion of the sales of motor vehicles by practically all dealers in the state of Ohio are transactions in which payment of the larger part of the purchase price is made in deferred installments. Generally,

however, the dealer is not equipped to handle these transactions himself and must arrange for the financing thereof with some financial institution or institutions which generally require either a legal lien upon or a legal interest in the vehicle and insurance against physical damage and theft of the vehicle; that in case of deferred payments the cost of insurance is added, a chattel mortgage is given to the seller to secure the payments, and this is assigned to the institution financing the transaction, and the insurance premium is paid by it to the insurer; that the agents of plaintiff Motors Insurance Corporation, solicit and place the insurance incidental to such sales, but may not make the placement of such insurance with the said Motors Insurance Corporation a condition of such sales or such financing, an option of procuring such insurance through an agent and in a company of the purchaser's choice being given each purchaser, **but in most cases purchasers have elected to insure with said Motors Insurance Corporation.** (Emphasis ours.)

In addition to the above described insurance placed by plaintiffs' agents, they also placed damage and theft insurance on vehicles sold for cash by the dealer with whom or which the agent is connected; on vehicles not sold by the dealer with whom the agent is connected, and on renewal policies on vehicles whether or not originally sold by the dealer with whom the agent is connected; that the insurance so written covers only the retail purchaser or owner but subject to any known lien or interest; that in no instance has an agent placed any insurance on vehicles owned by such agent or his employer, and the entire premium cost is borne solely by the retail purchaser or owner; that defendants have determined that if a majority or some other substantial number of policies of insurance placed in Ohio pursuant to a license issued under §644 GC by a person engaged in Ohio in the motor vehicle sales business cover motor vehicles which had been sold by such person or his or its employer or employees, then it is the duty of the superintendent of insurance to revoke or refuse to grant or to refuse to renew such license, even though none of such policies has insured or would insure any interest of such person or employer as seller, and even though the entire premium cost of such insurance is or would be borne solely by the retail purchaser or owner of the motor vehicle.

The petition further alleges that defendants' interpretation of the statute involved, to wit: §644-3 GC and related statutes, is incorrect, and that the practical effect of their enforcement as interpreted by defendants would be to destroy the

insurance business of plaintiff in Ohio and would exclude persons connected with the business of selling motor vehicles from engaging in such insurance business in Ohio; and that unless enjoined, defendants will revoke existing licenses and refuse to renew or issue new licenses to agents representing plaintiffs, and which acts are and would be unconstitutional and result in irreparable loss.

The prayer of the petition is that defendants be enjoined from enforcing §§644 and 644-3 GC as thus interpreted, to wit: from refusing to grant insurance licenses to persons otherwise qualified on the nomination of Motors Insurance Corporation, or from refusing to admit such persons to examinations to determine their qualifications to be licensed as insurance agents, or from refusing to renew licenses held by plaintiffs and those whom they represent, or from revoking such licenses, upon the sole ground that the principal use of such licenses has been or is or will be to procure, receive, forward, solicit, place or effect insurance covering solely the interests of persons, firms or corporations other than such licensees or their employees or employers on motor vehicles which such licensees or their employees or employers have sold or are selling.

Defendants filed a demurrer to the petition on the ground that it does not state facts sufficient to show a cause of action and the case is now before this court on said demurrer.

The case has been argued at length and both sides have filed extensive briefs which the court has read and re-read before coming to a conclusion on the questions involved, which in substance are these, namely, do §§644 and 644-3 GC inhibit the licensing of the persons by whom and on whose behalf this action is brought, and if so, are the statutory provisions invalid as being violative of the constitutional provisions of the state of Ohio and the United States.

The statutes in question are §§644 and 644-3 GC which provide as follows:

"**Sec. 644 GC.** Agent's license issued, when; notice of appointment; contents, revocation or cancellation of license; renewal; review; exceptions.

"No person shall procure, receive, or forward applications for insurance unless a resident of this state and duly licensed by the superintendent of insurance. Upon written notice by an insurance company authorized to transact business in this state of its appointment of a person to act as its agent the superintendent of insurance, if he is satisfied that the appointee is a suitable person and intends to hold himself out in good faith as an agent; that appointee is honest, trust-

worthy and understands the duties and obligations of an agent and is familiar with the insurance laws of the state and with the terms and provisions of the policies and contracts of insurance he proposes to effect; that in applying for such license it is not appointee's purpose or intention principally to solicit or place insurance on appointee's own property or that of relatives, employers or employees or that for which they or the appointee is agent, custodian, vendor, bailee, trustee or payee, shall issue to appointee a license which shall state in substance that the company is authorized to do business in this state and that the person named therein is a constituted agent of the company in this state for the transaction of such business as it is authorized to transact therein. Such appointee, if he has not theretofore held a license as an insurance agent in this state, shall be required to submit to a hearing and examination as to the above qualifications. Such notice by an insurance company of its appointment of an agent shall be upon a form furnished by the superintendent of insurance and shall be accompanied by a statement under oath by the appointee which shall give appointee's name, age, residence, present occupation, occupation for the five years next preceding the date of the notice and such other information, if any, as the superintendent of insurance may require, upon a blank furnished by him. Such examination and hearing shall be held and decision rendered by the superintendent of insurance within thirty days from date of application for license. The superintendent of insurance, after the granting of such license, for cause shown, and after a hearing, may determine any persons so appointed, or any person heretofore appointed as agent to be unsuitable to act as such agent, and shall thereupon revoke such license, and notify both the company and the agent of such revocation. Unless revoked by the superintendent of insurance or unless cancelled by him on written notice from the company or the agent that the agent's authority to act for the company has been terminated by the company, such license and any other license issued to an agent or any renewal thereof shall expire on the 30th day of June next after its issue. But any license issued and in force when this act takes effect or thereafter issued, may, in the discretion of the superintendent, be renewed for a succeeding year or years by a renewal certificate without the superintendent's requiring the detailed information required by this act. A foreign or alien insurance company shall pay a fee of two dollars for every such license and for each renewal thereof.

"The action of the superintendent of insurance in granting,

revoking, renewing or refusing to grant, revoke or renew such license shall be subject to review in accordance with the provisions of the administrative procedure act.

"An insurance company shall be bound by the acts of the person named in the license within his apparent authority as its agent.

"This section shall not apply to life insurance companies, including fraternals nor to domestic mutual protective assessment fire associations as defined in §9593 GC nor affect the provisions of §644-2 GC thereof."

"Sec. 644-3 GC. Refusal to grant or renew license and revocation of license; investigation of written complaint; appeal; hearing. It shall be the duty of the superintendent of insurance to refuse to grant any license applied for, to refuse to renew, and to revoke any license of or to any appointee, agent, solicitor or foreign broker, when he is satisfied that the principal use of such license has been or is to procure, receive or forward applications for insurance of any kind, other than life, or to solicit, place or effect such insurance directly or indirectly upon or in connection with the property of such appointee, agent, foreign broker or solicitor or that of relatives, employers, employees, or that for which they or the appointee, agent, foreign broker or solicitor are or is agent, custodian, vendor, bailee, trustee or payee, or to evade or violate the provisions of §9589-1 GC.

It also shall be the duty of the superintendent of insurance when a written complaint is filed with him that any such appointee, agent, foreign broker or solicitor has been, is or will be using any license or renewal thereof directly or indirectly for the purpose or purposes above set forth, to investigate such complaint forthwith. Provided, however, that in the event the superintendent of insurance finds there is no probable cause for complaint, he may order the complaint dismissed. Such action of the superintendent of insurance shall be subject to review by appeal to the court of common pleas of Franklin County, Ohio, provided such appeal shall be filed by the complainant with the superintendent of insurance and the court within thirty days after such action by the superintendent. Said cause shall proceed as a new civil action with the right of either party to submit evidence and to appeal.

Unless, the complaint has been dismissed as aforesaid, immediately upon completion of such investigation, the superintendent of insurance shall fix a time and place at which such complaint will be heard and shall give notice thereof to the complainant and to the appointee, agent, foreign broker

or solicitor complained of. The date set for such hearing shall be within thirty days, but not earlier than fifteen days after the date of such notice. The complainant shall be a party, and any other person as defined by §154-62 GC upon application to the superintendent of insurance and for good cause shown may be made a party to such hearing. At such hearing, any party shall have the right to produce and examine witnesses and to participate in the investigation and hearing with all rights of a party under the provisions of the administrative procedure act including the right of appeal from any order entered therein to the common pleas court of Franklin County."

Counsel for plaintiffs argue at length about the ambiguities and grammatical faults of these sections, as a result of which the intention of the legislature is at best difficult to determine, but that in the last analysis the conclusion as to the legislative intent is that it was to prevent the obtaining of insurance at discriminatory rates.

As supporting this theory, a comprehensive history of the various legislative enactments governing the insurance business is indulged to indicate a continued and consistent purpose to prohibit rebating and otherwise discriminatory practices in connection with insurance premiums.

The state of Ohio first began to supervise and regulate the insurance business in this state when it organized a separate department and provided for a superintendent of insurance and made it unlawful for any person or company to engage in the insurance business unless licensed by the said superintendent.

In 1910 the legislature enacted what is substantially now §9589-1 GC, which prohibited rebates or other special favors as an inducement to secure insurance.

In the case of **State v. Conn, 110 Oh St, 405,** the Supreme Court stated that

"the purpose of the fire insurance act (§9589-1 GC) was to prevent discrimination as to rates directly or indirectly by the insurer between its insured, and that it has not for one of its purposes the prevention of competition between insurance companies as to the rate which each may charge."

In 1917 the legislature amended 644 and also enacted §§644-1, 644-2, 644-3 and 644-4 GC.

Sec. 644-3 GC provided for the revocation or withholding of a license by the superintendent of insurance when he is satisfied that the principal use of such license was to effect insurance upon the property of the licensee or applicant for a license.

The purpose of this statute would appear to be that licenses should not be granted to persons who were not intending to use the same for the general insurance business, but rather for their own individual benefit, since by the provisions of §9589-1 GC, a duly authorized agent was entitled to the regular commission on policies of insurance on his own property, the insurance covering which he himself effected.

The following is the wording of §644-3 GC as originally enacted in 1917:

"Sec. 644-3 GC. It shall be the duty of the superintendent of insurance to withhold any license applied for, or revoke any license to any agent, solicitor, or broker when he is satisfied that the principal use of such license is to effect insurance upon the property of such agent, broker or solicitor, or to evade or violate the provisions of §9589-1 GC."

The statute remained in this form until amended in 1949 and which amended statute has been heretofore set forth.

While the amendment is perhaps needlessly verbose and should not be held up as an example of the best English or grammatical perfection, yet it seems clear that the legislature intended to add to the reason for refusing to grant or renew licenses or for revoking one already issued, that the principal use was to effect insurance upon the property of the licensee, the further provisions that the principal use also included property of relatives, employers, employees, or the property for which the licensee, relatives, employers or employees, is or are agent, custodian, vendor, bailee, trustee or payee.

It is the contention of plaintiffs that even should the statute be construed most unfavorably to them, that the restriction as to the insurance involving property for which certain named persons are vendors, that it could refer only to the time that the named persons held the property either actually or theoretically and that as soon as the property was sold and the property belonged to the purchaser, the restriction no longer applies.

In other words it is desired to construe the restrictive provisions of the statute as relating to insurable interests of the licensees, their relatives, employers, etc.

If this had been the intention of the legislature a great deal of trouble was indulged to express a simple purpose, and which could have been simply and directly stated.

Nor can the court agree that the primary purpose of the legislative enactment was to further lessen the chances of rebating or the affording of unfair advantages to persons insured, and to accomplish this the legislature was narrowing still further the field of activity of the licensee.

In view of the provisions of §9589-1 GC which specifically prohibits rebating or other special favors or inducements to secure insurance, and provides for the revocation of licenses in cases of violations, the query naturally arises why there should be any necessity for a statutory provision curtailing an agent's activities for fear of his violating this statute.

The absolute guaranty that there would be no violation of §9589-1 GC, would be, of course, to inhibit the licensee from writing any insurance, which of course lends to an absolute absurdity, toward which the suggested legislative purpose is at least a small step.

Prior to 1935 about the only conditions precedent to the granting of a license to a person affording him the right to act as an insurance agent were that some insurance company authorized to transact business in this state give a written notice to the superintendent of insurance of appointment of such person as agent, and the superintendent be satisfied that the appointee is a suitable person and intends to hold himself out in good faith as an agent.

In 1935 §644 GC was amended, setting out the further conditions, that before the superintendent should issue a license that he should be satisfied **that the appointee "is honest, trustworthy and understands the duties and obligations of an agent and is familiar with the insurance laws of the state and with the terms and provisions of the policies and contracts of insurance he proposes to effect; that in applying for such license it is not appointee's purpose or intention principally to solicit or place insurance on appointee's own property or that of relatives, employers or employees or that for which they or the appointee is agent, custodian, vendor, bailee, trustee or payee * * *."** (Emphasis ours.)

Subsequent to this enactment the interpretation placed on the added conditions precedent to the issuing of licenses was that they precluded automobile salesmen since presumably they would use their licenses to insure automobiles sold and being sold by their employers.

In the case of **Motors Insurance Corporation v. Dressel, 80 Oh Ap, 505,** decided in our own Court of Appeals, the court held that the superintendent of insurance could not add to the qualifications or conditions for an insurance agent's license and that automobile salesmen could not be denied licenses simply for that reason.

This case affirmed the decision of Judge Leach of this court and in the case of **Automobile Insurance Agency v. Lloyd, 36 Abs 448,** the same judge held that where the applicants had the qualifications set out in §644 GC and

"Intend to hold themselves out in good faith as insurance agents * * * there is nothing to show that it is their purpose and intention principally to solicit or place insurance on their own property or that of relatives, employers or employees, or that for which they or the appointee is agent, custodian, vendor, bailee, trustee or payee," they are entitled to be licensed.

After the decision in the Dressel case, supra, the Motors Insurance Corporation filed applications for numerous persons connected with General Motors automobile dealers, and the superintendent of insurance held hearings to determine whether or not the applicants intended to use their licenses principally in connection with automobiles sold by agencies with which they were connected, and in granting the licenses the superintendent found from the evidence that the applicants expected to secure most of their business from persons other than their own or employers' customers.

It clearly appears, therefore, that the interpretation placed on the added provisions of §644 GC made in 1935, was that there was a restriction against licensees placing insurance on motor vehicles sold by them or their employers, and this restriction was not limited to or determined by the vendor's interest, but was intended to apply to those transactions where the licensee or his employer had actually sold the particular automobile involved.

The purpose of the restriction was undoubtedly intended to prevent an unfair advantage in the placing of insurance and the licensing of persons who were not intending to do a general insurance business, but simply to supplement their primary business of selling automobiles.

This having been the interpretation of the provisions of §644 GC, prior to the amendment of §644-3 GC when the added provisions for revocation were incorporated which were in effect those provisions of §644 GC added in 1935, it is concluded by the court that the legislature intended the same interpretation of the amended 644-3 GC and that the restrictions with respect to insurance on property of which the licensee or his employer is the vendor applies to the time the sale is consummated, and the licensee is in an especially advantageous position to place the insurance.

This leaves then the question whether the statute so interpreted is violative of any constitutional right.

In this connection it must first be noted that it is generally recognized that the insurance business is one vested with a public interest and as such properly subject to government control.

See **Verducci v. Casualty Co., 96 Oh St, 260.**

Such being the case the right to engage in the insurance business is not an absolute right but a privilege accorded by the state granted upon specified terms and conditions. The restrictive provisions therefore in connection with the granting of licenses for selling insurance are not the deprivation of property nor do they afford special privileges. On the contrary, they seek to avoid special privileges being enjoyed or of which special advantage may be taken.

Counsel for plaintiff have cited numerous cases in support of their theory that legislative regulation of business is unconstitutional, most of which cases are readily distinguishable on the facts and will not be individually discussed.

The case most nearly comparable to the instant case is that of Hauser v. North British and Mercantile Title Insurance Co., 206 N. Y., 455, in which the New York court held invalid a statute requiring an applicant for an insurance license to file an application stating that he "is engaged or intends to engage in good faith principally in the insurance business, or that he conducts or intends to conduct such business in connection with a real estate agency or real estate brokerage business."

The question naturally arises as to why an agent might not conduct an insurance business in connection with other business than the real estate business, and it is apparent that the law did not have a general application.

The syllabus of that case is as follows:

"A statute under the guise of an exercise of the police power cannot arbitrarily interfere with that liberty of pursuit; the equal protection of the laws means equality of opportunity to all in like circumstances, and classification to be valid must not be arbitrary and discriminate against persons without a basis in reason."

In its opinion the court said:

"We may readily concede that, as a measure regulative of a business pursuit, which, from the extent to which it is carried on, is presumably, affected with a public interest, the requirement by the legislature of a license would not be an unreasonable exercise of power. That would afford an opportunity for inquiry into antecedents and fitness of character, and be a reasonable enough precaution in the public interest. But the legislature has prescribed in this statute a condition for the issuance of the license, which is a purely arbitrary restriction. There is no good reason, and no public interest can, conceivably, be subserved in prohibiting persons from conducting the business of an insurance agent or broker, in

connection with any other lawful business, or occupation in which they may be engaged."

This distinguishes that case from the instant one, where the restriction is general and not of limited application since it is referable to any kind of business.

The statute under consideration does not deprive any class, group or individual from securing an insurance license if he has the necessary qualifications and intends to use his license to conduct a general insurance business, qualified only by the provision that the license is not to be used primarily to effect insurance on his own property, or that of relatives, employees, employers, or that for which they or the licensee are or is agent, custodian, vendor, bailee, trustee or payee.

It, therefore, cannot be successfully maintained that the effect of the statute is to deprive any one from the right or ability or opportunity to secure a license to sell insurance.

In the case of Daniel v. Family Security Life Insurance Co., 336 U. S., 220, the Supreme Court of the United States upheld the validity of a South Carolina statute forbidding undertakers to serve as life insurance agents.

From a reading of the court's opinion and the note appended, containing reasons advanced before the legislative committee when the law was under consideration, we must come to the conclusion that the law was aimed at the possible evil of a monopolistic control of a certain kind of life insurance, providing among other benefits, the payment of funeral expenses, for the reason that undertakers would be in an advantageous position to effect such insurance.

The same argument was pressed in that case as is now voiced, namely, that an insurance lobby had secured the passage of the law, and the court properly held that it was not equipped to decide the desirability of the law. The reasons inducing the legislation are immaterial, if a valid statute is enacted into law.

In the instant case it is not difficult to see that if automobile salesmen may be licensed as insurance agents without restriction or limitation, the effecting of all kinds of insurance involving automobiles could conceivably and reasonably become in theory, if not in fact, a monopoly controlled by that company or companies which were successful in having the automobile agents licensed to sell their insurance.

The prevention of such an eventuality could well have been the purpose of the legislature in enacting the law under consideration, which the court determines is not in contravention with any of our state or national constitutional provisions.

Counsel stress the provision of the statute with respect to

the word "solicit" and put out the difficulty of determining the percentage of solicitation as between the general public, and the restricted classes. The court is of the opinion that this question will present little or no difficulty, and that only those solicitations which result in effecting insurance will be regarded. In other words, the word "solicit" is to be regarded as related to and to be interpreted with "place and effect," and a mere solicitation without method effecting any insurance would be disregarded.

After all, it is only the insurance actually placed which can give the superintendent any accurate information as to whether there has been any violation of the licensee's promise that his purpose is not principally to insure his own property and that of relatives, employers or employees or that for which they or he is vendor, etc.

Any abuse of discretion on the part of the superintendent of insurance in refusing to issue licenses because of any questions relating to the insurance of property of which the licensee or his employer is vendor, is subject to review or correction by the courts, so that the agents' or prospective agents' rights are properly guaranteed.

The fact that a law may be difficult of application or the subject of administrative abuse does not of itself make the law invalid.

For the reasons stated, the court has determined that the petition does not state facts sufficient to constitute a cause of action and therefore defendants' demurrer is sustained.