OPINION
{¶ 1} Appellants, A-1 National and Jerrold Schmidt, appeal the December 29, 2003 decision of the Court of Common Pleas of Van Wert County, Ohio, affirming the March 7, 2003 Decision and Order of the State of Ohio Department of Insurance ("ODI"). In its Order, the Superintendent of Insurance ("Superintendent") suspended appellants' insurance licenses for 90 days and required the implementation of a corrective action plan. In addition, the Superintendent ordered appellant Schmidt to submit quarterly reports to ODI demonstrating that he has a current errors and omissions policy.
 {¶ 2} The record reveals that appellant Jerrold Schmidt was a licensed insurance agent, and as of January 1, 2001 was the sole shareholder of appellant A-1 National Agency Group. ("Schmidt," "A-1 National," or "Appellants").
 {¶ 3} On or about November 22, 2000 Cheryl Bowersock completed an application for automobile insurance with Julie Smith, an agent of A-1 National. Ms. Bowersock submitted a check for $205.20 with the application as a down payment on the policy. Ms. Bowersock testified at the hearing that it was her understanding the $205.20 was a down payment on the policy and that she would be making monthly payments on the premiums.
 {¶ 4} By late December 2000, Mrs. Bowersock became concerned because she had never received a written insurance policy or a bill for the first month's premium. She contacted her bank and verified that the $205.20 check had cleared her account on December 21, 2000. After repeated efforts to contact A-1 National, Mrs. Bowersock finally spoke with Jerrold Schmidt on January 12, 2001.
 {¶ 5} Schmidt testified at the hearing and acknowledged that Mrs. Bowersock submitted the original application to Julie Smith, an agent of his company, on November 22, 2000 and that he deposited the check for $205.20 into an A-1 National trust escrow account used exclusively for policy premiums in December 2000.
 {¶ 6} Schmidt testified that his first involvement with Mrs. Bowersock was on January 12, 2001 when he learned that the application had not been submitted to the insurance company. He testified that thereafter, he submitted the application to Vision Insurance after he altered the signature date on the application from November 22, 2000 to January 12, 2001 "to make sure that the coverage started and [Mrs. Bowersock] would not be without insurance." Schmidt was aware of Vision's policy not to accept applications more than three days after the date of the signature. He altered the date on the application in an attempt to make it timely.
 {¶ 7} Schmidt submitted a check for $165.20 to Vision Insurance with the application, $40.00 less than Mrs. Bowersock had given to A-1 National in November. Schmidt testified that he did not have an accounting system in place to match checks with applications. He also testified that he had not balanced the escrow account, or any other business accounts, "in years." Schmidt did reimburse Mrs. Bowersock the $40.00 on January 2, 2002, after being informed of the discrepancy by the ODI investigator.
 {¶ 8} As a result of A-1 National's failure to submit Mrs. Bowersock's application to Vision in November 2000, she was unknowingly without insurance for almost four months. During this period, she drove her car illegally because she did not have automobile insurance. In addition, had she been in an auto accident her only recourse would have been Schmidt and A-1 National's errors and omissions insurance policy. However, the record indicates that Schmidt let that policy lapse. Therefore, due to the failure to submit her application, Mrs. Bowersock would have been without any recourse had she been in an accident during this period.
 {¶ 9} Mrs. Bowersock initiated a consumer complaint with the ODI in February 2001. After the Department conducted an investigation, it served appellants with a Notice of Opportunity for Hearing, informing Mr. Schmidt and A-1 National that the Superintendent intended to suspend or revoke their licenses. Specifically, the Notice to Schmidt alleged three violations of R.C. 3905.49(B)(4), (5), and (18). Notice to A-1 National alleged violations of R.C. 3905.49(B)(3), (5) and (18).
 {¶ 10} Schmidt and A-1 National requested a hearing, which was held on August 20, 2002. In his report dated December 19, 2002 Mark LeMaster, the hearing officer, found violations of R.C. 3905.49(B)(3) — (5), but found no violation of RC. 3905.49(B)(18). He recommended to the Superintendent (1) a suspension of both A-1 National and Schmidt's insurance license, and (2) the implementation of a corrective action plan. The plan would require that A-1 National hire a certified public accountant.
 {¶ 11} Schmidt and A-1 National filed objections to the hearing officer's Report and Recommendation with the Department of Insurance. The Superintendent, after considering the hearing officer's report and recommendation and appellants' objections, ordered a 90 day suspension of both Schmidt and A-1 National's insurance licenses, the implementation of the corrective action plan, and in addition required that Schmidt submit quarterly reports verifying that he has a current errors and omissions policy.
 {¶ 12} Schmidt and A-1 National appealed to the Van Wert County Court of Common Pleas, which upheld the decisions of the Superintendent. This appeal followed, and Schmidt and A-1 National submit five assignments of error:
The trial court erred in overruling Appellants' claim that they weredenied a fair hearing by the hearing examiner in violation of their dueprocess rights under the Fourteenth Amendment of the U.S. Constitution andArticle I, Sec. 16 of the Ohio Constitution.
 The trial court erred in overruling Appellants' claim that the findingof the Superintendent of Insurance in paragraph No. 2 of her Order thatMr. Schmidt failed to timely submit Mrs. Bowersock's application toVision Insurance Group is arbitrary, unreasonable, capricious, irrationaland unsupported by the evidence and the trial court's ruling is contraryto law.
 The trial court erred in overruling Appellant's claim that the findingof the Superintendent of Insurance in paragraphs 2 and 4 of her Orderthat A-1 National and Mr. Schmidt knowingly misrepresented the effectivedate of Carol Bowersock's application to Vision is arbitrary,unreasonable, capricious, irrational, and unsupported by the evidence andis contradicted by paragraph 4 to the effect that Appellants did notengage in any fraudulent activity, and the trial court's ruling iscontrary to law.
 The trial court erred in overruling Appellants' claim that the findingof the Superintendent of Insurance in paragraph No. 3 of her Order thatA-1 National misappropriated her $40.00 overpayment is arbitrary,unreasonable, capricious, irrational, and unsupported by the evidence andis contradicted by paragraph No. 4 that Appellants did not engage infraudulent activity and the trial court's ruling is contrary to law.
 The trial court erred in overruling Appellants' claim that the Order ofthe Superintendent that the licenses of both Jerrold Schmidt and A-1National be suspended for not less that 90 days; that the correctiveaction plan detailed by the Report and Recommendation of Mark LeMaster beimplemented; that Jerrold Schmidt be required to submit proof with eachquarterly report that he has current Errors and Omissions Policy is,separately as to each section, arbitrary, unreasonable, capricious,irrational and unsupported by sufficient evidence and the trial court'sruling is contrary to law.
 {¶ 13} At the outset, we note our review of administrative decisions is limited to determining whether the trial court has abused its discretion in reviewing the agency's order. Pons v. Ohio State MedicalBoard (1993), 66 Ohio St.3d 619, 622. An abuse of discretion is not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Therefore, we must examine the evidence to determine whether or not the trial court abused its discretion, but we cannot substitute our judgment for that of the trial court or the administrative agency. Lorain City School Dist. Bd. of Ed.v. State Emp. Relations Bd. (1988), 30 Ohio St.3d 257, 261.
 {¶ 14} On questions of whether the agency's order is in accordance with law, our review is plenary. Univ. Hosp., Univ. of Cincinnati Collegeof Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339.
 {¶ 15} The trial court's review is limited as well: the court must uphold the agency's order if it is supported by reliable, probative and substantial evidence and is in accordance with law. R.C. 119.12; seeUniv. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110. The Court of Common Pleas must appraise all of the evidence, including the "credibility of witnesses, the probative character of the evidence and the weight to be given it. . . ." Andrews v. Bd. of Liquor Control
(1955), 164 Ohio St. 275, paragraph one of the syllabus. R.C. 119.12 does not permit a trial de novo in the court of common pleas. Id.
 {¶ 16} In their first assignment of error, appellants' argue that they were denied a fair hearing in violation of their due process rights. Appellants claim that the hearing officer questioned Mr. Schmidt on matters not contained in the notice of administrative hearing. In particular, the hearing officer questioned Schmidt about the termination of his agency contract with Vision Insurance. Appellants claim that by questioning Schmidt on these matters the hearing officer acted as a prosecutor and neglected his duty to provide for a fair hearing. For the following reasons, we find that the trial court did not abuse its discretion in holding that appellants had a fair hearing.
 {¶ 17} First, although not specifically tied to the events at issue in the hearing, the hearing officer's questions were relevant to the proceedings in that they went to mitigation under R.C. 3905.49(E). That section provides:
The Superintendent may consider the following factors in denying alicense, imposing suspensions, revocations, fines or other penalties, andissuing orders under this section:
 (1) Whether the person acted in good faith;
. . .
(3) The actual or potential harm to others;
. . .
(6) The number of individuals adversely affected by the person's actsor omissions;
. . .
(10) Remedial efforts to prevent future violations.
. . .
(12) Such other factors as the superintendent determines to beappropriate under the circumstances.
 {¶ 18} The hearing officer's questions related specifically to the termination of the agency contract between Vision Insurance and A-1 National. The reason for the contract termination apparently had to do with Schmidt and A-1 National's failure to timely file insurance applications within the period specified by Vision. According to Vision's representative, Schmidt had exceeded binding authority, based on comparisons between post-marked dates and received dates of insurance applications, on numerous occasions, at times up to "12 or 13 days."
 {¶ 19} The record indicates that Appellants offered mitigation evidence to demonstrate that this was a one-time incident and that Schmidt did not normally exceed binding authority. Appellants submitted as evidence a letter from a representative of Progressive Insurance stating that "there have never been any problems with binding authority with this agent." Schmidt's failure to timely submit applications bears directly on his ability to engage in the business of insurance. Mitigation was clearly an issue in this case, and thus the hearing officer's questioning was entirely relevant to the proceedings. Specifically, it was relevant to several factors outlined in R.C. 3509.49(E): the number of individuals his actions affected, the possibility of future violations, and potential harm to others.
 {¶ 20} Second, Appellants object to the fact that they were not initially permitted to cross-examine Vision's representative after she had been questioned by the hearing officer. The hearing officer initially prohibited Appellants' counsel from questioning the witness on the matter of the agency contract cancellation, because it was unclear whether or not that would be relevant and counsel for ODI had not questioned on that subject. However, the record clearly demonstrates that once it became apparent that Schmidt's overall operation of his business was in question, the hearing officer permitted Appellants' counsel to question the witness on these matters. The transcript reflects:
Hearing Officer LeMaster: . . . I will allow you to call [the Visionrepresentative] back in here, in fact, I'll do it myself, and you can askthe questions that I wouldn't permit you to ask the first time. I didn'tfeel that at the time that was the appropriate time for those questionsto be asked. I wanted to hear what your client had to say first. But youcan ask — you can call her after your client finishes and ask her thatline of questioning. . . .
Therefore, even if it was error to prohibit Schmidt's counsel from cross-examining the witness on these issues, it was harmless error.
 {¶ 21} Third, the Superintendent's Order specifically states that she did not rely on any of this evidence, and that the Order was based solely on Schmidt's actions and the factual circumstances pertaining to the handling of Mrs. Bowersock's insurance application. The Order states:
My findings that Mr. Schmidt and A-1 National committed violations ofOhio's insurance code are based solely upon the following: (1) Mr.Schmidt's admission that he changed the date on Mrs. Bowersock'sapplication, (2) Mr. Schmidt's admission that he did not timely submit theapplication to Vision, and (3) Mrs. Bowersock's $40.00 remained in A-1National's accounts until she lodged a complaint against him. Theseundisputed facts fully and independently support the violations that Ihave found in this Order. I consider the testimony elicited by thehearing officer concerning Mr. Schmidt's history of failing to timelysubmit applications to Vision as mitigation evidence only.
Once again, even if it was error for the hearing officer to ask these questions pertaining to Schmidt's handling of other applications that testimony was not relied on by the Superintendent in her Order. Therefore, any error that occurred was harmless. For the foregoing reasons, Appellants' first assignment of error is overruled.
 {¶ 22} For ease of discussion, we will discuss Appellants' second, third and fourth assignments of error together.
 {¶ 23} In these assignments of error, Appellants' argue, in effect, that there was no fraudulent intent and no actual harm to Mrs. Bowersock in this particular instance, and that therefore it is inappropriate to suspend Schmidt and A-1 National's licenses as a result. Appellants repeatedly state that "the Bowersocks suffered no loss," and "no attempt was made by Jerrold Schmidt to commit a misrepresentation to Vision that could cause any damage to Vision or the Bowersocks."
 {¶ 24} In effect, Schmidt argues that he had good intentions, and was only trying to remedy earlier errors for which he places sole responsibility on a former employee, Julie Smith. Appellants' position appears to be that any misconduct on the part of Schmidt or A-1 National was in the best interests of Mrs. Bowersock, in an attempt to provide for immediate coverage. Schmidt testified that he altered the date of the policy, "[B]ecause I wanted to get the policy in force because I didn't want [the Bowersocks] to have any trouble." Schmidt and A-1 National accept that they would be civilly liable to the Bowersocks had there been any damages, but argue that this does not provide a basis for the penalties imposed by the Superintendent.
 {¶ 25} These arguments misconstrue the nature of the administrative hearing and the powers of the Superintendent under R.C. 3905.49(B), which provides:
(B) The superintendent may suspend, revoke, or refuse to issueor renew any license as an agent, surplus line broker, or limitedinsurance representative, or impose any other sanction authorizedunder this chapter, for one or more of the following reasons:
. . .
(3) Misappropriating or converting to the person's own use any moneysbelonging to policyholders, prospective policyholders, beneficiaries,insurance companies, or others received in the course of the person'sinsurance business;
 (4) Failing to timely submit an application for insurance. For purposesof division (B)(4) of this section, a submission is considered timely ifit occurs within the time period expressly provided for by the insurer,or within seven days after the agent accepts a premium or an order tobind from a policyholder or applicant, whichever is later.
 (5) Knowingly misrepresenting the terms, benefits, value, cost, oreffective dates of any actual or proposed insurance policy or contract;
. . .
(18) Engaging in any fraudulent or coercive practice in connection withthe business of insurance;
These provisions, in effect, create a strict liability system whereby a violation opens insurance agents to potential penalties. These are not criminal offenses; there is no requirement of harm.
 {¶ 26} The State has a right to ensure that insurance agents are properly engaged in the business of insurance. Friedman v. Ohio Dept. ofIns. (2003), Cuyahoga App. No. 82367, 2003-Ohio-5076 (citing Motor Ins.Corp. v. Robinson (1951), 106 N.E.2d 572, 62 OLA 58. The business of insurance is one of public interest, and therefore the State has an interest in regulating the industry. See State ex rel. Federal UnionIns. Co. v. Warner (1934), 128 Ohio St. 261, Verducci v. Casualty Co. ofAmerica (1917), 96 Ohio St. 260, 263. Hence, "statutes designed to regulate [the business of insurance] should be liberally construed to effect the purpose to be served and to prevent and correct evils growing out of the conduct of such business." Warner, 128 Ohio St. at 264.
 {¶ 27} The purpose of R.C. 3905.49(B) was to grant the agency the ability to suspend or revoke the licenses of those who are not properly engaged in the business of insurance. The question before the Superintendent was not whether Schmidt and A-1 National's conduct harmed either Vision or the Bowersocks, but whether he was properly engaged in the business of insurance. The question before the trial court was therefore whether or not there was sufficient evidence in the record to support the ODI's decision to suspend appellant's license. The question before us is whether or not the trial court abused its discretion in determining that the Superintendent's order was supported by reliable, probative and substantial evidence and in accordance with the law.
 {¶ 28} The Superintendent's decision was based largely on admitted facts. Schmidt admitted that Mrs. Bowersock submitted her application of insurance to an agent of A-1 National on November 22, 2000. Schmidt admitted that he changed the date on Mrs. Bowersock's application after realizing that it was not timely submitted to the insurance carrier. He admitted to retaining $40.00 of her initial deposit for almost two years before the ODI investigator informed him of the discrepancy. He admitted that he did not keep books and records or an accounting of A-1 National's business accounts. He admitted that he let his errors and omissions policy lapse, thus leaving Mrs. Bowersocks with no recourse had she been in an auto accident between November 2000 and February 2001, the period she was without insurance.
 {¶ 29} Based on the totality of these circumstances we find that the Court of Common Pleas acted within its discretion in holding that the Superintendent's order was supported by reliable, probative and substantial evidence. Therefore, Appellants' second, third, and fourth assignments of error are overruled.
 {¶ 30} In their fifth assignment of error, Appellants argue that the Superintendent's Order was arbitrary and unreasonable because (1) the hearing officer pursued an issue that was not in the notice of hearing and (2) the penalties in the Order go beyond procuring insurance for Mrs. Bowersock. For the following reasons, we hold that the trial court did not abuse its discretion in holding that the Superintendent's order was supported by supported by reliable, probative and substantial evidence.
 {¶ 31} As already noted, the Superintendent's Order did not rely on the testimony procured by the hearing officer's questions pertaining to Schmidt's exceeding binding authority on other occasions. The Order was based solely on the factual circumstances surrounding Schmidt and A-1 National's handling of the Bowersock application. Thus, Appellants' first argument for why the Superintendent's Order was arbitrary, unreasonable, and not supported by the evidence is not well taken.
 {¶ 32} Moreover, the corrective action plan required by the Superintendent was entirely within her authority, and the penalties imposed go directly to addressing the circumstances that allowed for A-1 National's mishandling of this application and Mrs. Bowersock's resulting lack of insurance. Had Schmidt kept a proper record of the company's finances it would have noticed the $40.00 discrepancy. Had there been a system in place to reconcile the bank accounts with the client applications the failure to process Mrs. Bowersock's application would have become clear. Furthermore, requiring Schmidt to demonstrate that he has a current errors and omissions policy will ensure that future clients are protected in the event of similar errors, and goes directly to the fact that Schmidt's lack of such a policy left Mrs. Bowersock without a remedy had she been in an accident.
 {¶ 33} Appellants' contention that the Order should not go beyond procuring insurance for Mrs. Bowersock is untenable. The purpose of this administrative hearing and the Superintendent's Order was not to procure insurance for Mrs. Bowersock — that is no longer an issue — but to ensure that Schmidt and A-1 National are properly engaged in the business of insurance. The Superintendent's order was directly related to Schmidt's operation of A-1 National, and is designed to ensure that the company operate in a manner consistent with holding a license to practice in that industry.
 {¶ 34} Therefore, we hold that the trial court did not abuse its discretion in finding that the corrective action plan contained in the Superintendent's Order was not arbitrary and unreasonable. Based on the foregoing, Appellants' fifth assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Bryant and Rogers, JJ., concur.