## BANKERS LIFE & CASUALTY COMPANY *v.* CRAVEY, Comptroller-General, etc.

No: 17687.   Argued January 16, 1952—Decided January 29, 1952—
        Rehearing denied February 14, 1952.

*Alex McLennan* and *Brundage & Short,* for plaintiff.

*Eugene Cook, Attorney-General, Lamar Sizemore, Assistant Attorney-General, M. H. Blackshear Jr., Deputy Assistant Attorney-General, B. D. Murphy* and *Robert E. Hicks,* contra.

DUCKWORTH, Chief Justice. The plaintiff in error came into Georgia in 1947 as a duly licensed insurance company and has conducted a successful business continuously until the defendant in error refused to renew its license as required by law on July 1, 1951. Conducting its insurance business in this State was not by mere grace of some individual officer, but instead was in virtue of a right to do so conferred by the laws of this State. Code of 1933, Chapter 56-4, as amended. Of course, being affected with the public interest, its business operations were subject to regulations prescribed by the laws of this State as a condition upon which the right to do business was granted. Beyond doubt the company's operation in this State has been mutually beneficial to the company, the State and the people of the State. It has approximately 87,000 policyholders and 75 soliciting agents in Georgia. During the first six months of 1951 the company paid to its policyholders in Georgia $241,529.45. In February of 1951 it paid to the defendant Insurance Commissioner $300 as the annual fee for the renewal of its license for the fiscal year beginning July 1, 1951, and $18,000 in taxes. This mutually beneficial operation has been abruptly terminated by the Insurance Commissioner, and the present proceeding was instituted for the purpose of preventing a continuance of that termination. Regulation does not mean management. This court in *Southern Bell Tel. & Tel Co.* v. *Georgia Public Service Com.,* 203 *Ga.* 832 (49 S. E. 2d, 38), undertook to draw and define the line between permissible regulation and unauthorized management of private business. Upon holding that line inviolate rests the fate of the liberty secured by the Constitution. Once regulation is allowed to become management by government, we are plunged down the broad road to a socialistic state and the end of individual liberties.

To qualify for the right to conduct its insurance business in this State, the petitioner was required to pay a fee of $300, Code (Ann. Supp.), § 56-401.1 (Ga. L. 1950, pp. 122, 123; 1951, pp. 664, 666), and to file a statement with the Insurance Commis-

sioner, verified by its president and secretary, setting forth its receipts and disbursements for the preceding year and much other data revealing its financial structure and qualification for doing an insurance business. Code, § 56-402. When it has done this and otherwise fully complied with the laws of Georgia, the Insurance Commissioner is required to issue or renew its license, the law employing the imperative term, "shall issue a license to said company to transact business in this State." Code (Ann. Supp.), § 56-403 (Ga. L. 1887, p. 115; 1893, p. 80; 1947, p. 1622; 1951, pp. 664, 665).

Broad powers to investigate this and any other insurance company doing business in this State, including the right to examine its books and records and take the testimony of its officials and employees at its home office and at the expense of the company, are conferred upon the Insurance Commissioner and his authorized agents by the Code, § 56-105. By conferring this power on the Commissioner, the law, in equal measure, lays upon him the duty to do so whenever there is an apparent need for information concerning the company. It provides for the revocation of the company's license to do business if it refuses to permit such an examination. By Code § 56-106 it is provided that, if the Commissioner has reason to believe that the company is insolvent or is fraudulently conducting its business, he must proceed as provided in Code § 56-832, wherein 90 days' notice and an opportunity to satisfy any complaint made is made a prerequisite to a revocation of the license. Counsel for the Commissioner, in the oral argument, sought to draw a distinction between revocation and refusal to renew a license. There is no difference in substance between the two. It is essential that insurance companies once qualified and licensed be assured that they may safely incur the expenses necessary for the permanent establishment of their business in this State, and that the license will be continued by annual renewals so long as they meet the requirements of the law of this State. In addition to the powers of investigation just referred to, the General Assembly of 1950 (see Ga. L. 1950, p. 326) conferred additional powers upon the Commissioner for the purpose of enabling him to require insurance companies to conform to the fair-trade practices therein prescribed. The Commissioner is empowered to inquire into whether

any insurance company has violated that act, and the procedure such inquiries must follow is set forth in the act. He is required to specify any charge against the company and to give 15 days' notice and a hearing. The act goes further and provides that, when the Commissioner has reason to believe that one engaged in the insurance business in the State is employing methods of competition, or any act or practice that is unfair or deceptive, not defined in that act, he shall proceed in the same manner by specifying the charge with 15 days' notice and a hearing—all of the Commissioner's findings in these respects being made subject to review by the courts. We think that the foregoing investigative powers of the Commissioner constitute a legislative "blueprint" of the procedure that he must employ. By following that procedure the Commissioner could discover the truth concerning any matter about which his suspicions here caused the refusal to renew the license of this company.

But counsel for the Commissioner seize upon language found in Code (Ann. Supp.) § 56-403, wherein it is required that, if the Commissioner is satisfied with the correctness of the company's statement filed in conformity with Code § 56-402, and that the company has complied fully with the law, and if he is of the opinion that its financial condition and affairs are sound and its transaction of business will not be hazardous, he shall issue a license; and upon the further provision that the issuance or renewal of a license or the refusal thereof must be based on the financial condition as shown by its statement and on "such further information" as "he shall require" regarding its financial condition or manner of conducting its operation. We find nothing in this section that will sustain the refusal of the Commissioner to issue the license here. Any dissatisfaction that he might have or any opinion that he entertains concerning the company's statement, financial condition, and manner of conducting business must be supported by facts, and there are no such facts here. The law does not confer upon the individual who happens to be Insurance Commissioner unlimited power to entertain dissatisfaction or opinions arbitrarily and capriciously as a basis for refusal to renew the license. Ours is a government by law and not by men. By referring to information that the Commissioner shall require, the law contemplates that he must

require it in the manner prescribed by law, and it is made his duty to adopt that procedure when necessary to require information which he desires as a basis upon which to act in issuing or refusing to issue a renewal of the license. There is nothing in the law placing upon the insurance company a duty to copy its records and mail them to the Commissioner and, when he has fully performed his duties and employed the powers given him by law, he will have all the information that he could obtain by requiring copies of the company's records to be mailed to him. In *Dickerson* v. *Mangham,* 194 *Ga.* 466 (22 S. E. 2d, 88), this court dealt with a case involving the question of whether or not a public officer could require one to supply him with information which under the law, if he had performed his duties, would have been in his possession already. There the Commissioner of Labor was authorized to inspect the records of an employer and to make copies of the same for his own file, and yet he sought to require an employer to transport the original records some distance for use as evidence on a hearing by the Commissioner or his agents. We held that, commensurate with the power of the Commissioner to examine the records and copy the same, was a duty to do so, and he could not neglect this duty and require the employer to supply him with information that his performance of duty would have revealed. We adhere to that ruling here, and by its application to the Insurance Commissioner hold that, having the power and duty to investigate this insurance company, to inspect its original records and take the sworn testimony of its agents, he had a duty to do so and was unauthorized to impose upon the company a duty to copy its records and refuse a renewal of its license upon its failure in that respect.

Furthermore, the petition shows that the Employees Welfare Account about which the Commissioner sought information is a deposit of money which is not carried in the statement of the company as a company asset. It thus appears to be clearly within the field of management and beyond governmental regulation. Also two of the documents, copies of which were requested, have never existed and the other two are in the possession of the Commissioner. In this situation, if the Commissioner had authority under the law to require the company to supply copies of records and refused the renewal of its license upon its

failure to supply him with such copies, the facts here would not justify his refusal, because (1) the record was irrelevant, and (2) either non-existent or in his possession already. For all of the reasons above set forth, the refusal of the Commissioner to renew the license was without justification. The failure to perform this official duty will irreparably injure the petitioner. Therefore the petition alleges a cause of action. Code, §§ 64-104, 64-105; *Poole* v. *Duncan*, 202 *Ga.* 255 (42 S. E. 2d, 731). It follows that the court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. All the Justices concur, except Wyatt, J., who dissents. Head, J., concurs specially.*