National Automobile Underwriters Association et al., Petitioners-Appellees, v. J. Edward Day, Director of Insurance of State of Illinois, Respondent-Appellant.

Gen. No. 9,831.

Opinion filed November 14, 1952. Rehearing denied January 12, 1953. Released for publication January 12, 1953.

IVAN A. ELLIOTT, Attorney General of State of Illinois, of Chicago, for respondent-appellant; WILLIAM

C. Wines, Raymond S. Sarnow, and A. Zola Groves, all of Chicago, and Wayne Cook, of Springfield, Assistant Attorneys General, of counsel.

Hershey, Bliss & Wanless, of Springfield, and Watters & Donovan, of New York, New York, for certain petitioner-appellee; J. Thor Wanless, of Springfield, and Thomas Watters, Jr., James B. Donovan, John P. Walsh, and Edward T. Brown, all of New York, New York, of counsel.

Gillespie, Burke & Gillespie, of Springfield, for certain other petitioners-appellees.

Mr. Justice O'Connor delivered the opinion of the court.

Pursuant to the provisions of the Illinois Insurance Code (Ill. Rev. Stat. 1951, chap. 73, sec. 613 [par. 613, sec. 1] et seq.) [Jones Ill. Stats. Ann. 66.676 et seq.] J. Edward Day, as Director of Insurance of the State of Illinois, hereinafter called the appellant, held certain hearings concerning fleet rates. The hearings culminated in an order dated February 9, 1951, which is as follows:

## "ORDER

1. Disapproving, effective April 1, 1951, all motor vehicle 'fleet policy' rate filings of respondents; and
2. Promulgating a rule defining 'fleet policy' as a guide for future filings.

The above entitled matter coming on for consideration after a Hearing held in the office of the Director of Insurance, herein referred to as the Director, State House, Springfield, Illinois, on the 28th day of December, 1950, and continued on the 26th day of January,

556

1951, for the purpose of reviewing all rate filings which provide for or concern 'fleet policies' of motor vehicle insurance, the undersigned, J. Edward Day, Director of Insurance, State of Illinois having acted as Hearing Officer at said Hearing and having carefully heard, read and considered the testimony, evidence, and exhibits thereto adduced at said Hearing, and being fully informed, does FIND:

## FINDINGS.

1. That all companies and rating organizations concerned, hereinafter referred to as Respondents, were given due notice of a hearing to be held on the 28th day of December, 1950; that certain of said Respondents were present or represented at the hearing by counsel; and that the Director has jurisdiction of all the Respondents so notified and of the subject matter of the hearing;

2. That said hearing was held pursuant to Section 458 (3) of Article XXIX of the Illinois Insurance Code, for the purpose of reviewing all rate filings which provide for or concern 'fleet policies' of motor vehicle insurance, as defined in Section 456 (3) of said Code;

3. That the term 'fleet policy' is defined in Section 456 (3) of Article XXIX of the Code as follows:

'The term "fleet policy" as used in this subsection (3) shall mean an insurance risk, under any form of motor vehicle insurance, of five or more motor vehicles, all owned by one insured or all under one general management and used principally for business purposes.'

4. That on May 14, 1940, the following bulletin designated AR–40, was promulgated by the then Director of Insurance:

'There has been some misunderstanding on the part of companies as to the intent of Section 419 of Article

XXVI* of the Illinois Insurance Code wherein automobile fleets are defined.

'The intent of the definition reading—

"an insurance risk of five or more motor vehicles all owned by one insured, or all under one general management . . . ", is to enable corporations and their subsidiaries to insure fleets of automobiles under one policy but it was not the intent that groups of individually owned vehicles under some form of common management could be insured as an automobile fleet. Companies will, therefore, understand that only motor vehicles under one common ownership, as explained above, may be insured under fleet policies.'

This rule, which has continued in effect since that date, by its terms undertook to prohibit use of a fleet policy in any common management situation unless all vehicles involved were under one ownership.

5. That, in accordance with such bulletin, fleet rating plans on file with the Department on behalf of most of the Respondents define 'fleet' to require both one ownership and common management. The rate filing of one of the Respondents, which was represented at the hearing, Allstate Insurance Company, contains the following definition of fleet:

'Fleet is defined as follows:

 a. Five or more automobiles,

 b. under one ownership, and

 c. under one direct operating management.

 Automobiles rented or leased by the named insured and operated to all intent and purposes as owned automobiles shall be considered as owned automobiles.'

---

(* Note: Section 419, Article XXVI, was repealed by an Act approved July 21, 1947 and replaced by Section 456 (3), Article XXIX, wherein the definition was reenacted in the same words.)

6. That in an informal hearing before the Director on November 2, 1950, requested by Greyvan Lines, Inc., a motor carrier, and at which representatives of one of the Respondents, National Automobile Underwriters Association, were present, it was contended by Greyvan that the practice of granting fleet rates on motor vehicles only where there is common ownership is unfairly discriminatory in situations where motor vehicles are not under one ownership but are, in fact, under one general management.

7. That at a second informal hearing on the same matter, held November 28, 1950, a transcript of which has, by stipulation, been made a part of this record, the Director submitted a proposed draft rule defining 'fleet policy' in terms of the full statutory definition as given in Section 456 (3) of the Code;

8. That the present hearing—Number 1015—was called for the purpose of reviewing all rate filings involving fleet policies; of hearing all arguments showing why such filings, insofar as they do not provide for common management situations, should not be disapproved as unfairly discriminatory; and for the purpose of considering a proposed draft rule in which 'fleet policy' is interpreted in terms of its full statutory definition;

9. That Respondents defended the single ownership rule now in effect with the majority of companies and rating organizations as being:

 (a) uniform throughout the different States;

 (b) time-tested;

 (c) sound from an insurance standpoint and in conformity with the rule promulgated by the Department of Insurance on May 14, 1940; and

 (d) the best way to prevent 'fictitious fleets.'

10. That Respondents, in opposition to the proposed draft rule, maintained:

 (a) That, by destroying the uniformity now allegedly in effect in the various states, grave prob-

lems in statistical record keeping and administration would be created;

(b) That the rule would be difficult to apply because of ambiguous and vague phrases which would necessitate legal interpretations and active policing methods; and

(c) That it would 'open the door' to 'fictitious fleets.'

## OPINION

The rule which the Department has proposed is a minimum rule under the language of the statute. The Illinois Insurance Code is one of the few state insurance laws which contain a definition of 'fleet policy.' If it is unique in using the word 'or' in the phrase 'all owned by one insured *or* all under one general management,' that fact does not alter the effect of the statute or modify the Director's duty with regard to its enforcement.

We consider the statute unambiguous. Material concerning statutory history and construction, therefore, pertains rather to legislative policy than the question before us.

Respondents' arguments in favor of single ownership as a requirement for fleet rates are not without merit. They are not, however, conclusive nor sufficient justification for the denial of fleet coverage to motor vehicles under one common management in disregard of the clear language of the statute.

Respondents contend that present rate filings are in conformity with the Department rule promulgated in Bulletin AR–40 and cannot therefore be unfairly discriminatory. They admit, however, that under the language of the statute fleet rates could be granted in common management situations. They contend only

that the statute does not require it. Under this interpretation, however, Bulletin AR–40 is, by admission of Respondents, an incomplete interpretation of the statute.

The permissive nature of a statute does not imply the right to divide or to select among its clauses. Section 456 (3) of the Code is permissive only insofar as it permits fleet policies to be written or not to be written; if they are written in Illinois the definition contained therein is clearly mandatory. The proposed rule has been drafted with particular care to give the statutory definition full effect while at the same time excluding the possibility that 'fictitious fleets' may be written.

If fleet policies are written, therefore, the rules and rates filed with the Department for such policies must conform to the full statutory definition. Whether motor vehicles are under one common ownership or one general management, fleet coverage, if available at all, must be available for both.

## ORDER

It is therefore ordered by J. Edward Day, Director of Insurance, of the State of Illinois:

1. That, effective April 1, 1951, all filings for 'fleet policies' to the extent that they fail to make reasonable provision for common management situations, are hereby disapproved;

2. That the attached rule, (Attachment No. 1), interpreting and making effective Section 456 (3) of the Code, is hereby promulgated by authority of Section 401 of said Code, as a guide for such filings in the future;

3. That the Department's previous ruling, as contained in Bulletin AR–40, of May 14, 1940, is hereby revoked; and

561

4. That all parties to this matter, as contained in the caption be notified of this FINDING OPINION AND ORDER.

> IN WITNESS WHEREOF, I hereunto set my hand and cause to be affixed the seal of my office at the City of Springfield, Illinois, this 9th day of February, A. D. 1951.
>
> J. Edward Day,
> Director of Insurance
> (SEAL) STATE OF ILLINOIS''

National Automobile Underwriters Association, an insurance rating organization representing 200 members and about 80 subscribers in the State of Illinois which are insurance companies licensed to write automobile physical damage insurance in the State of Illinois; Insurance Company of North America, a corporation; Indemnity Insurance Company of North America, a corporation; and Philadelphia Fire and Marine Insurance Company, a corporation, hereinafter called the appellees, filed a proceeding in the circuit court of Sangamon county, to review and set aside the order of the Director, pursuant to sections 471 and 407 of the Insurance Code.

On July 27, 1951, the trial judge entered an order setting aside the order theretofore entered by the appellant, dated February 9, 1951. This appeal is from the order of the circuit court of Sangamon county.

The statute in question reads as follows:

''The term 'fleet policy' as used in this subsection (3) shall mean an insurance risk, under any form of motor vehicle insurance, of five or more motor vehicles, all owned by one insured or all under one general management and used principally for business purposes. Rates may be made for insurance under a fleet policy but under no circumstances shall motor vehicles owned

562

by employees be included with or insured under a fleet policy of an employer, nor shall any manual of classifications, rule, rating plan or rating system for insurance covering such employees' motor vehicles be filed. Added by act approved July 21, 1947. L. 1947, p. 1098.'' (Ill. Rev. Stat., 1951, chap. 73, sec. 456 (3) [par. 1065.3 (3)] p. 2249 [Jones Ill. Stats. Ann. 66.1128 (3)].)

Eliminating the words not necessary to a decision herein the statute provides in substance that rates may be made for insurance under a fleet policy, and that the term ''fleet policy'' shall mean an insurance risk of five or more motor vehicles all owned by one insured, or all under one general management and used principally for business purposes.

Although there is some argument to the contrary, we believe that the record shows that fleet rates in general are lower than rates for individual owners.

Appellees contend that under the statute they may, if they so desire, insure fleets consisting of five or more motor vehicles all owned by one insured; they may if they so desire, insure fleets consisting of five or more motor vehicles under one common management; they may, if they so desire, insure fleets of both types, or they may insure neither.

Appellant contends that there is no duty on appellees to write fleet insurance at all, but if they do write fleet insurance it must be applicable to fleets under common management even though the vehicles are not commonly owned, as well as those under common ownership.

The state has the power to regulate insurance companies in the public interest, subject only to constitutional limits. So the question becomes—what did the legislature intend by this section?

The statute states that the term ''fleet policy'' shall mean *an insurance risk.* The legislature con-

templated one risk, not two. This is the fundamental error in appellees' position. Throughout their argument they refer to the statute as though there were two separate risks. This is not so. The legislature used the word "risk"—not "risks." It is singular—not plural. The legislature provided for an insurance risk to be called a "fleet policy," and then went on to define who was entitled to fleet-policy rates—those persons who own five or more motor vehicles *or* those persons who have five or more motor vehicles under one general management and used principally for business purposes. Either group qualifies for the fleet rate under the statute.

Appellees' contention that the long-established insurance rule that the insured, under a fleet rate, must own the automobiles insured and not merely have the management of automobiles owned by others is sound. They contend that only the owner has the right to control the operation of the vehicle and that an owner takes better care of his property than a lessee or someone with less than full ownership. Expert witnesses for the appellees so expressed their opinions at the hearing. We agree that the owner is more apt to take better care of his property than anyone else, but fail to see how it aids appellees. The evidence shows that Greyvan Lines which initiated this inquiry is an organization of individually-owned trucks banded together under one common management for business purposes. Surely these individual owners are going to drive their own vehicles as carefully or more carefully than a truck driver employed by a corporation which owns hundreds of trucks. Yet Greyvan and other similar companies have not been eligible for fleet rates because the vehicles have not been owned by one person.

Furthermore the order provides that the insured must have the exclusive right to direct the business use of the insured vehicles and that they be subject to

564

uniform safety standards as to maintenance and operation. Thus appellees will not be required to insure anyone who does not have the right to control, which they say is the difference between ownership and management.

It is a fundamental weakness of appellees' position that they have been unable to point out any difference between a group of vehicles owned by one person and a group of vehicles under one general management for business purposes, which would be eligible for fleet rates under this order. With no difference apparent, it strengthens our opinion that the legislature did not intend to differentiate between them under the statute in question. The legislature provided for one insurance risk—not two, as contended for by appellees.

█ Appellees contend that under the statute insurers who wish to underwrite non-owned automobile groups under one general management are free to do so, and that those who wish to insure fleets all owned by one insured are free to do so. This was not the intent of the legislature. It intended the fleet rate to be applicable to either group, and therefore if the company chooses to insure "fleets" it can not refuse groups under "one general management."

The cases cited by appellees concerning the restricted power of administrative officials are not in point because the Director of Insurance in issuing the order in question is merely carrying out the legislative intent.

█ Appellees point out the construction of the statute for which they contend has been acquiesced in for 12 years by the Insurance Department. This construction is erroneous and an erroneous construction of a statute by an administrative agency is not binding on the courts. *Winakor v. Annunzio,* 409 Ill. 236.

█ This order will not open the door to "fictitious fleets." A "fictitious fleet" is a banding together of individual car owners for the sole purpose of obtaining

a fleet rate, and without any business purpose being involved or served. The order states a purpose to prevent "fictitious fleets." It defines a fleet as five or more motor vehicles all owned by one insured, or all under one general management and used principally for business purposes and lays down numerous tests they must meet in order to be considered under one general management.

The Director's order is not mandatory. It does not command anyone to do anything. It merely disapproves rate schedules which fail to make fleet rates applicable to common management situations, and this was the intent of the legislature.

The order is not vague, indefinite nor ambiguous, as contended by appellees.

■ Appellees contend that the order is unreasonable because in no other state in the country is insurance written under a non-owner "one general management" policy. That may be, but the legislature of Illinois has seen fit to provide for this type of business in Illinois, and if fleet policies are to be written they must be written in accordance with the legislative requirements.

■ The administrator has no right to exercise powers not given him by the legislature, but this order is merely carrying out the legislative fiat.

■ We do not believe that the "common management" and the "ownership" problems are separate and distinct insurance risks, but if appellees believe they are then their arguments should be addressed to the legislature. The present statute entitles both groups to the fleet rates.

For these reasons the judgment below should be reversed.

*Judgment reversed.*