SAM SAFFORE, ADMINISTRATOR *AD PROSEQUENDUM*, OR, IN THE ALTERNATIVE, GENERAL ADMINISTRATOR OF THE ESTATE OF ESSIE SAFFORE, DECEASED, PLAINTIFF-APPELLANT, v. ATLANTIC CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued March 5, 1956—Decided March 26, 1956.

*Mr. Samuel H. Nelson* argued the cause for appellant (*Mr. Irving J. Rosenberg,* of counsel).

*Mr. Jerome S. Lieb* argued the cause for respondent (*Mr. Abraham I. Harkavy,* of counsel; *Messrs. Harkavy and Lieb,* attorneys).

The opinion of the court was delivered by

HEHER, J. The question here concerns the liability of the defendant insurer under a renewal of a policy of insurance issued May 24, 1950 to George W. Edwards, Jr., and his wife, Millie, covering the liability imposed upon them by law for "damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use" of a designated Buick automobile, limited to use "for pleasure," and in liability to the amounts therein specified, but providing by a rider that the insurance "applies only while the automobile is operated by the named insured," and "does not apply while the automobile is operated by any person other than the named insured."

The policy was issued to George W. Edwards, Jr., as the

owner of the vehicle, with coverage for his wife; and it includes a provision, under the heading "Financial Responsibility Laws," section 8, that such insurance "as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits, of liability stated in this policy," and the insured "agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

The issue of liability involves, as we shall see, the significance and meaning of the State's Financial Responsibility Law. *R. S.* 1937, 39:6–1, *et seq.*, now *N. J. S. A.* 39:6–23 *et seq.*, *L.* 1952, *c.* 173, approved May 10, 1952, effective April 1, 1953.

On April 7, 1952, while operating the insured automobile with Edwards' permission, one Johnson was involved in a mishap which had fatal consequences for plaintiff's deceased and himself. An action brought in the United States District Court for the District of New Jersey eventuated in a judgment of $10,000 for the plaintiff herein against Johnson's estate. Edwards and his wife and another were party defendants, but they were absolved, Edwards by a directed verdict on the ground that, while the deceased Johnson's operation of the automobile was by Edwards' leave, he was not Edwards' agent. The defendant insurer defended the action for Edwards under a "reservation of rights" based upon the contention that neither Edwards "nor Johnson is covered for said accident," and the policy afforded no indemnity for such recovery as might be had. The stipulation states the question to be "whether or not Johnson was covered by the policy P-2 as renewed and in effect at the time and place of the accident."

The contractual relations of the parties began May 24, 1949, under a like liability policy providing such coverage, for a term of one year, for the assured and his spouse and also, paragraph III, "any person while using the automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." During the subsistence of the policy, on February 19, 1950, the insured, George W. Edwards, Jr., had an accident while operating the automobile which resulted in damage to another vehicle in excess of $100, and personal injury to another. Upon the expiration of the policy term, it is stipulated, the insurer "would only agree to the issuance of another policy to Edwards containing the same terms and conditions but limiting the operation of paragraph III * * * by the inclusion of Endorsement No. 17," and "Accordingly, on May 24, 1950, there was issued to Edwards a new policy of insurance," for the ensuing year, "similar in substance to the earlier one, but with the addition of Endorsement No. 17," providing that the insurance would not include the operation of the automobile by a person other than the named insured, the policy including also the provision that "Such insurance as is afforded by this policy" "shall comply with the provisions of the motor vehicle financial responsibility law of any state or province," but only to the "extent of the coverage and limits of liability required by such law," and "in no event in excess of the limits of liability stated in this policy." And on May 24, 1951, the policy was renewed "in its entirety" for another year.

It is also stipulated that "Policy P–1 was issued on May 24, 1949 without endorsement No. 17 because at that time defendant was not writing policies containing such an endorsement," but that the "renewal policy was issued with endorsement No. 17 thereon on May 24, 1950 because at that time the rules and regulations of the defendant required the inclusion of that endorsement on all policies issued to insurable risks such as was presented" by Edwards; that the "decision to issue P-2 containing the endorsement was based

upon the experience encountered during the insuring period of the first policy, P-1," and "Edwards was considered a bad insurance experience risk, a troublesome line of insurance and one which was recommended for cancellation unless the renewal policy contained endorsement No. 17"; and that "At the time of issuance of policy P-2 and renewal certificate, the defendant was issuing many various types of insurance policies, many of which did not include endorsement No. 17," and "If the policy P-2 and renewal thereof as issued by defendant" to Edwards, "containing Endorsement No. 17 was not acceptable to Edwards, this defendant would not have accepted the risk and issued the policy or renewal thereof."

The insurer asserts freedom to contract according to the terms of the writing. It is insisted that the policy, as written, explicitly limits the coverage to the Edwards; and that section 8 limits "compliance" with the Motor Vehicle Financial Responsibility Act to "such insurance as is afforded by the policy forming the basis of the suit." The "expressed intention" of the parties is deemed controlling, citing *Kindervater v. Motorists Casualty Insurance Co.*, 120 *N. J. L.* 373 (*E. & A.* 1937); and it is said that in none of the cases invoked by plaintiff, *e. g. Woloshin v. Century Indemnity Co.*, 116 *N. J. L.* 577 (*Sup. Ct.* 1936); *United States Casualty Co. v. Timmerman*, 118 *N. J. Eq.* 563 (*Ch.* 1935), "did the Court change the language of the policy of insurance to conform with provisions of the Financial Responsibility Act"; in each instance, it is suggested, the insurer sought escape from liability within "coverage admittedly undertaken," while here, by the terms of the contract, the Financial Responsibility Law has reference only to the "obligations assumed by it with respect to Edwards"; coverage of "any third person" was "specifically excluded."

It is affirmed in argument that George Edwards was then "in that class of persons from whom financial responsibility could have been required by the Commissioner of Motor Vehicles," yet Johnson was not within the class, or, more accurately, such was not shown to have been the case, and

*R. S.* 39:6–18 "does not refer to all policies issued by an insurance carrier," but rather to "an insurance policy furnished as provided herein," and the policy so issued is required to "A. Designate * * * all motor vehicles with respect to which coverage is intended to be granted thereby, and insure the insured named therein and any other person using or responsible for the use of any such motor vehicle * * *," or "B. In the alternative, insure the person therein named as insured against loss from the liability * * * growing out of the operation or use by the insured of a motor vehicle, except a motor vehicle registered in the name of the insured, and occurring while the insured is personally in control, as driver or occupant, of the motor vehicle * * *"; and that the policy then given to Edwards "constituted (as the endorsement was entitled), a named operator's policy of insurance which would cover them while driving a motor vehicle, other than one owned by them" and the "assured George Edwards was the owner of a Buick and permission was given to the assureds to drive that vehicle."

Here, we have revealed the basic flaw in the insurer's case. The policy in suit expressly covered Edwards' Buick automobile, and was required by paragraph "A" to "insure the insured named therein" (Edwards) "and any other person using or responsible for the use of any such motor vehicle." The alternative paragraph "B" provided for the insurance of the person named therein from the liability growing out of the operation or use by the insured of a motor vehicle, "except a motor vehicle registered in the name of the insured," and "occurring while the insured is personally in control, as driver or occupant of the motor vehicle," which is not this case. The automobile was Edwards', registered in his name.

These are entirely different concepts: "A," the damage done by the negligent operation of a particular vehicle; "B," the insured's negligent operation of another's vehicle.

The insurer was concededly aware of the accident of February 19, 1950 which obliged the Commissioner of Motor Vehicles, *R. S.* 39:6–1, 11, then effective, to require "satis-

factory" proof of the actor's financial responsibility to satisfy any future claims for damages by reason of personal injuries or death; and the insurer could not by any device whatsoever set at naught the declared legislative policy. *Section* 39:6–11 provided that the "proof may be evidence of the insuring of the person against public liability and property damage" in the given amounts; and *R. S.* 39:6–18 declared that the policy "furnished as provided" therein "shall be a policy of liability insurance" designating "by explicit description or appropriate reference, all motor vehicles with respect to which coverage is intended * * * and insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured, against loss from the liability imposed upon the insured or other person by law, for injury to or death of a person," with certain exceptions not apposite here.

The insurer would avoid the consequences of the statute by giving the owner of the automobile a "named operator's policy," and then accord him "permission" to "drive" his own vehicle, which would go without insurance in the hands of another.

*R. S.* 39:6–20, as amended by *L.* 1945, *c.* 189, then effective, provided that "No motor vehicle liability policy shall be issued or delivered in this State unless such policy discloses * * * the agreement that the insurance thereunder is provided in accordance with the coverage defined in sections 39:6–18 and 39:6–19 of this Title and in this section and is subject to all the provisions of this Chapter"; and the "motor vehicle liability policy shall be subject" to certain provisions "which need not be contained therein," these among others: "The policy, any written application therefore and any rider or endorsement which shall not conflict with the provisions of this chapter shall constitute the entire contract between the parties," and "Effective as of the date such proof is furnished and to the extent of the coverage required by this chapter * * * any policy of motor vehicle liability insurance furnished as proof of finan-

cial liability pursuant to section 39:6–11 \* \* \* shall be deemed amended to conform with and to contain all the provisions required by this Chapter, any provision of the policy or certificate to the contrary notwithstanding."

■ There is no significance on this inquiry in the reservation to the insurer by *R. S.* 39:6–18, then effective, of the right to provide "any lawful coverage in excess of or in addition to the coverage" therein provided for, and to embody in the policy "any agreement, provision or stipulation not contrary to the provisions of this chapter and not otherwise contrary to law." This is purely interpretive, in the nature of a proviso to remove possible ground for misinterpretation of the extent of the enacting clause. It plainly does not sustain the "authority" asserted here.

And it is of no moment that the Commissioner had not made a demand upon Edwards for "proof" of financial responsibility. Financial responsibility was an imperative requirement of the statute; and, as said, the insurer was aware of the duty. It would be neither sound law nor good morals were the insurer, knowing of the happening which brought into operation the peremptory statutory obligation to submit satisfactory proof of financial responsibility, allowed to issue insurance so limited, in the insurer's own interest, as to circumvent the statutory policy of protection for third persons injured by the operation of the insured vehicle. Compare *Steliga v. Metropolitan Casualty Insurance Co. of N. Y.,* 113 *N. J. L.* 101 (*Sup. Ct.* 1934), affirmed 114 *N. J. L.* 156 (*E. & A.* 1934); *United States Casualty Co. v. Timmerman, supra; Woloshin v. Century Indemnity Co., supra; Ambrose v. Indemnity Insurance Co.,* 120 *N. J. L.* 248 (*E. & A.* 1938); *Atlantic Casualty Insurance Co. v. Bingham,* 10 *N. J.* 460 (1950). The essential reason of the law, its internal sense, is the key to its understanding.

■ There is involved here, not a mere regulation of the relations between the insurer and the insured *inter partes,* but a policy for the protection of the public against irremediable injury from negligence in the operation of motor vehicles on the public highways, and the placing of the

burden where it justly belongs. The insurer could refuse to enter into the contract of insurance required by the statute; but, having undertaken to give liability insurance coverage, the statutory terms became a constituent element of the contract. The statute determines the legal operation of the contract. *Herbert L. Farkas Co. v. New York Fire Insurance Co.*, 5 *N. J.* 604 (1950); *Rikowski v. Fidelity and Casualty Co.*, 117 *N. J. L.* 407 (*E. & A.* 1936); *Krieg v. Phoenix Insurance Co.*, 116 *N. J. L.* 467 (*E. & A.* 1936); *Osborn v. New Amsterdam Casualty Co.*, 111 *N. J. L.* 358 (*E. & A.* 1933). A specific provision integrated into the contract by force of a statute, as a matter of public policy, "must be interpreted and given effect in accordance with the intention of the legislature, irrespective of how the contractors understood it. Exactly the same result is reached even though the parties know nothing of the statute and do not include the provision, and even though they know of it and expressly agree upon the exact contrary." *Corbin on Contracts, section* 551. See also *Bakker v. Aetna Life Insurance Co.*, 264 *N. Y.* 150, 190 *N. E.* 327 (*Ct. App.* 1934); *Jones v. Preferred Accident Insurance Co.*, 226 *Wis.* 423, 275 *N. W.* 897 (*Sup. Ct.* 1937); *Board of School Commissioners v. Hahn*, 246 *Ala.* 662, 22 *So.* 2d 91 (*Sup. Ct.* 1945).

The insurance business is affected with a public interest and, as such, it is subject to reasonable regulation and control in the exercise of the police power to serve the public need. *McCarter, Attorney-General v. Firemen's Insurance Co.*, 74 *N. J. Eq.* 372 (*E. & A.* 1909); *California State Automobile Association Inter-Insurance Bureau v. Maloney*, 341 *U. S.* 105, 71 *S. Ct.* 601, 95 *L. Ed.* 788 (1951).

The judgment is reversed; and the cause is remanded for further proceedings in accordance with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice OLIPHANT—1.