320 P.2d 329

**GEM STATE MUTUAL LIFE INSURANCE ASSOCIATION, Inc., a corporation, Plaintiff-Appellant,**

v.

**Leo O'CONNELL, Commissioner of Insurance of the State of Idaho, Defendant-Respondent.**

No. 8543.

Supreme Court of Idaho.

Dec. 16, 1957.

Rehearing Denied Jan. 27, 1958.

Carl C. Christensen, Pocatello, for appellant.

Graydon W. Smith, Atty. Gen., Elbert E. Gass, Edward Aschenbrener, Asst. Attys. Gen., for respondent.

TAYLOR, Justice.

Plaintiff (appellant) is a mutual benefit life insurance association organized under the laws of this state and doing business as authorized and limited by the provisions of Title 41, Chap. 31, I.C. Plaintiff submitted to the defendant (respondent) state commissioner of insurance, for his approval, a form of policy bearing three supplements which it proposed to issue. Approval of the commissioner is required by statute. § 41–3117, subd. 5, I.C. The com-

missioner disapproved all three proposed supplements. Plaintiff appealed to the district court. That court affirmed the order of the commissioner and plaintiff brought this appeal.

Plaintiff, in its brief, abandoned the appeal as to one of the proposed supplements and assigned as error the judgment of the district court affirming the order of the commissioner as to the other two proposed supplements. The first supplement, referred to as extended grace period supplement, is as follows:

"After this policy has been in force one year, the grace period allowed will be automatically extended one additional month for each year that the premium has been paid.

"Should death occur during such extended grace period, the unpaid premium, without interest, will be deducted from the proceeds payable.

"The member may pay the premium due at any time during the extended grace period, regardless of condition of health, payment must be made before such extended grace period expires.

"Reinstatement may be made as provided in the policy after expiration of any extended grace period."

The second proposed supplement, referred to as total and permanent disability supplement, is as follows:

"If any Assured named hereon is totally and permanently disabled after this supplemental policy has been in force for 20 consecutive years and the Assured has attained the age of 65, and is not engaged in any profession or occupation that nets gain or profit, all premiums affecting such Assured and falling due thereafter shall be waived. Any Assured who may qualify for this benefit shall be given a waiver of premium receipt which shall relieve the Assured of the payment of premiums during any such period of total and permanent disability as described herein.

"Total and permanent disability shall mean incapacity or inability, voluntary or involuntary, of the Assured to engage in any business, profession or occupation that nets wages, gain or profit. The causes of Disability must originate from an accidental injury, sickness, or old age."

These supplements were disapproved by the commissioner and the court on the ground that they are not authorized by the governing statute, § 41–3117, I.C. So far as applicable that section provides, "(3) No policy shall be issued providing for surrender or loan value, * * * (6) Nor shall any such policy be issued or delivered unless it contains, in substance, the following provision: * * * (b) A grace period of thirty-one (31) days after the due date for making any payment re-

quired, during which grace period the policy shall continue in force," and "(e) That the policy may be reinstated after lapse thereof, at any time within ninety (90) days after date of any default in payment of sums due upon the production of evidence of insurability satisfactory to the association, and upon payment of all delinquent sums.

"7. * * * No policy shall be issued in this state which provides any benefits other than natural death benefits, unless a separate and additional premium is collected for each such other benefit, and a separate benefit fund maintained for all such other benefits, into which benefit fund shall be placed not less than two-thirds (⅔) of the gross premiums collected for such benefits after the first year's premium.

"Other benefits which may be issued in conjunction with the death benefit policy shall be limited to, and described as follows:

"(a) Specific accident benefit.

"(b) Additional accidental death benefit.

"(c) Total and permanent disability benefit—applicable to all members under identical terms, and which may be either waiver of premium during a specified period of total disability or a specified sum, or both." § 41-3117 I.C.

All policies are declared to be "annual renewable term contracts" by § 41-3113, subd. 1, I.C., in connection with the computation of the mean reserve, which determines the minimum amount of the benefit fund required by that section.

■ The extended grace period supplement was rejected on the specific ground that it, in effect, created extended term insurance not authorized by the statute. Such construction of the statute is too narrow and restrictive.

■ We recognize that the business of insurance is affected with a public interest, and is subject to regulation by the state in the exercise of its police power. Employers' Liability Assur. Corporation v. Frost, 42 Ariz. 402, 62 P.2d 320, 107 A.L.R. 1413; Union Mut. Life Co. of Iowa v. Bailey, 99 Colo. 570, 64 P.2d 1267; Caminetti v. Guaranty Union Life Ins. Co., 52 Cal.App.2d 330, 126 P.2d 159; Smith v. Penn. Mut. Life Ins. Co., 244 Ala. 610, 14 So.2d 690; Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300, 121 A.2d 543; People ex rel. American Bankers Ins. Co. v. Palmer, 363 Ill. 499, 2 N.E.2d 728, 106 A.L.R. 447; Motors Ins. Corp. v. Robinson, Ohio Com.Pl., 106 N.E.2d 572; Mann v. Policyholders' Nat. Life Ins. Co., 78 N.D. 724, 51 N.W.2d 853; Parmalee v. Iowa State Traveling Men's Ass'n, 5 Cir., 206 F.2d 518, 44 A.L.R.2d 410; California State Automobile Ass'n v. Maloney,

341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788 and Annotation 794.

◼ Like any other exercise of the police power, a regulation abridging or restricting the freedom of contract or the right to engage in any lawful business in a lawful manner must be reasonable and must reasonably tend to accomplish or promote the protection and welfare of the public. Regulations which are arbitrary or capricious and which unreasonably restrict or interfere with the liberties of the citizen, without accomplishing or promoting a legitimate object of the police power, are invalid violations of the fundamental law. State v. Finney, 65 Idaho 630, 150 P.2d 130; Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695; Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 P. 353.

In Bankers Life & Casualty Co. v. Cravey, 208 Ga. 682, 69 S.E.2d 87 at page 90, Chief Justice Duckworth said:

"Regulation does not mean management. * * * Upon holding that line inviolate rests the fate of the liberty secured by the Constitution. Once regulation is allowed to become management by government, we are plunged down the broad road to a socialistic state and the end of individual liberties."

◼ The insurance code (Title 41, I.C.) creates the office of commissioner of insurance with broad powers to secure the effective administration of the insurance laws, and all of the regulations contained therein are primarily intended to effect the protection of the people, and to promote their general welfare in relation to insurance. § 41–101, I.C. The police regulations therein contained must be so construed and applied by the commissioner as to attain that purpose, without unnecessary limitations upon the constitutional rights of the parties involved, and with a minimum interference with the free exercise of such rights. City of Twin Falls v. Harlan, 27 Idaho 769, 151 P. 1191; O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031; Carpenter v. Pacific Mut. Life Ins. Co. of California, 10 Cal.2d 307, 74 P.2d 761; National Automobile Underwriters Ass'n v. Day, 348 Ill.App. 554, 109 N.E.2d 630.

◼ The requirements of § 41–3117, I.C. are declared by the legislature to be "standard provisions", and that all policies issued must contain such provisions "in substance". While some of the standard provisions are favorable to the insurer, most of them are obviously intended for the benefit and protection of the insured. Granted that these specific standard provisions and limitations must be complied with and cannot be evaded, there is nothing in the statute to indicate legislative intent to deny to the insurer the right to add other provisions not inconsistent with or violative of the statute.

■ The requirement of grace period of thirty-one days is intended for the protection of the insured. It is not to be construed as a denial of his right to contract with his insurer for a more favorable grace period. The extended grace period proposed by plaintiff is nothing more than that. It does not in any way affect the provision for reinstatement after lapse, except to postpone its operation in cases where the extended grace period is applicable. It does not change the character of the contract, which remains an annual renewable term contract for all purposes of the legislative declaration contained in § 41–3113, subd. 1. By paragraph 7 of "General Provisions" of the policy, premiums continue to be payable annually. If any extension of the contract relationship between the parties, beyond one year, would prevent its being regarded as an annual renewable term contract (for the purpose of computing the mean reserve) then that result was accomplished by the legislature itself in the provisions for a thirty-one day grace period; for a ninety day reinstatement period, after lapse; and the provision that the policy shall be incontestable after two years from date of issue. § 41–3117, I.C.; American Ins. Co. of Texas v. Estes, Tex.Civ.App., 141 S.W.2d 459. Term insurance, as here used, may be defined as "insurance for the term or period for which a premium has been paid, with the right to continue it from term to term

on payment of the proper premium." 44 C.J.S. Insurance § 27 e, p. 488. The supplement does not create extended term insurance because the premium for the extended period is not paid. Further, by the terms of the supplement, should death occur during the extended period the unpaid premium is deducted from any benefit payable thereon. Thus, the benefit fund is protected to the same extent as though no default had occurred, as it is also protected by the standard provision for reinstatement after lapse.

■ A more difficult question is presented by the total and permanent disability supplement proposal. The commissioner disapproved this supplement because, as he construed it, the "incapacity or inability may be voluntary and that old age may be a cause." The district court affirmed on the ground that the use of the phrase "voluntary or involuntary" in the definition of total and permanent disability, renders it ambiguous and susceptible of a construction which would effect paid-up insurance after age 65. The district judge reasoned thereon as follows:

"If the Appellant wants to give a waiver of premiums for a specified period or in a specific amount, to one who has held a policy 20 consecutive years, is 65 years of age, and who in addition is totally and permanently disabled by reason of mental or physical

infirmity, so that he is unable to engage in any profession or occupation for gain or profit, it could easily and simply say so and it would meet the requirements of the law, so long as an extra premium and separate benefit fund is maintained to pay the costs of such benefits.

"If they wish to waive premiums merely because a member has held a policy for 20 years, is 65 years of age and not working, but is not totally and permanently disabled, such a provision would be ultra vires because it would amount to paid up insurance under such conditions and does not fit under the benefits allowed by 41–3117(7) I.C."

The district judge did not specifically object to old age as a qualifying ground of disability, except as it might operate in conjunction with the privilege of "voluntary" disability. We find no objection to the use of the term "old age" as a qualifying ground of disability. Where sickness is recognized as a causative source of such disability, the addition of the term "old age" would appear to be superfluous, since generally, if not always, disability in old age is a product of one or more of the degenerative diseases. The real objection to the supplement is the possibility that it may be construed to apply to an insured who, having a policy in force for tweny consecutive years, and on attaining age 65 is unemployed, may voluntarily declare himself totally and permanently disabled. The president and manager of the plaintiff in defining the phrase "voluntary or involuntary" testified that "voluntary" incapacity had reference to an insured who, being unable to work, voluntarily quit; and "involuntary" disability as referring to an insured, who being unable to work, was discharged by his employer. The statute requires total and permanent disability in fact. Assuming the definition given by the plaintiff's manager were accepted, and that the company would require proof of such disability in a so-called "voluntary" case, that does not end our inquiry. There are other factors to be considered. The statutory requirement cannot be waived. United Mut. Life Ins. Co. v. Ward, 201 Minn. 70, 275 N.W. 422. The commissioner must enforce the law as written. To enable him to do so he must be vested with a certain amount of discretion in approving or disapproving policy forms. The use of the phrase "voluntary or involuntary" may make it difficult for the commissioner to detect and prevent evasion of the statute. Also, a prospective policy holder might be led to believe that by subscribing he could acquire paid-up insurance after age 65 without a showing of actual disability.

We think the use of the phrase "voluntary or involuntary" in the supplement renders it ambiguous and that the commissioner acted within his authority and discretion in disapproving it.

No contention is made that either supplement would endanger the solvency of the "benefit fund" (§ 41–3113, I.C.) or the "separate benefit fund" (§ 41–3117(7), I.C.). In fact on the objection of the commissioner the court refused to receive evidence offered by plaintiff as to the condition of its funds.

The judgment disapproving the proposed total and permanent disability supplement is affirmed. The judgment disapproving the proposed extended grace period supplement is reversed and the cause is remanded with instructions to the district court to enter its judgment directing the commissioner to approve that supplement.

No costs allowed.

KEETON, C. J., and PORTER and Mc-QUADE, JJ., concur.

SMITH, Justice (dissenting in part and concurring in part).

I dissent from the majority opinion insofar as it approves appellant's first proposed supplemental, referred to as extended grace period supplemental.

I concur in said opinion insofar as it disapproves appellant's second proposed supplemental, referred to as total and permanent disability supplemental.

The judgment of the district court disapproving both proposed supplementals should be affirmed.