322 P.2d 1039

In the Matter of the Disapproval by the State Insurance Department of a Policy Form Designated "$500.00 Funeral Benefit" Form FB Submitted for Approval by GEM STATE MUTUAL LIFE ASSOCIATION, Inc., Pocatello, Idaho, Plaintiff-Respondent,

v.

Leo O'CONNELL, Commissioner of Insurance of the State of Idaho, Defendant-Appellant.

No. 8588.

Supreme Court of Idaho.

March 12, 1958.

Carl C. Christensen, Pocatello, for respondent.

Graydon W. Smith, Atty. Gen., Elbert E. Gass, Edward J. Aschenbrener, Asst. Attys. Gen., for appellant.

SMITH, Justice.

Respondent is a mutual benefit life association organized and existing pursuant to Idaho Code Title 41, Chapter 31. It cannot issue a policy unless the form be first approved by appellant, hereinafter called the Commissioner.

Respondent in this proceeding made application for the Commissioner's approval of a proposed form of policy, hereinafter referred to as the proposed policy, differing mainly from respondent's form of approved "standard" policy, issued upon the assessment plan, in that the phrase, "$500.00 Funeral Benefit" appears on the first page of the proposed policy, and it has appended a form of assignment for contemplated use by the beneficiary after the death of the assured, and a form of appellant's consent "to any valid assignment which may be made of this policy by the beneficiary hereof."

The Commissioner, after a hearing on the application, entered an order disapproving the proposed policy. Respondent's appeal to the district court resulted in a judgment reversing the Commissioner's order, and ordering the Commissioner to approve the proposed policy, from which judgment the Commissioner appealed. The Commissioner assigns error of the district court in entering the judgment.

Respondent issues its approved standard form of life policy for natural death benefit in multiples of $100 up to the statutory limitation of $5,000 to any one member; and it may include specified additional benefits, requiring payment of additional premiums, for specific accidents, accidental death and total permanent disability, not exceeding, additionally, the amount of the natural death benefit. I.C. § 41–3117.

Respondent desires to issue the proposed policy because its relatively small benefit will render it readily adaptable for payment of funeral expenses of a deceased assured, and easily serviceable. Respondent will issue it as a natural death benefit policy, included within its statutory limitation of the natural death benefit.

Respondent asserts in effect that the proposed policy is a departure from the standard life term policy in that the present policy is designed and intended as a funeral benefit or burial policy.

Respondent shows that the statute requires its approved standard policy, and will require its proposed policy, to be issued both as annual renewable term contracts, under the graded premium factor plan, (I.C. § 41–3115), and that the sum required to be placed in the natural death benefit fund and the basis of computing the mean reserve will be identical as to both policies (I.C. § 41–3113); that for the purpose of paying natural death benefit claims, it maintains only the one benefit fund, as required and computed by statute (I.C. § 41–3113); that premiums contemplated to be exacted under the proposed policy, and payments from such premiums into the natural death benefit fund, will be on the identical statutory basis as applicable to the approved standard policy for natural death benefit; and that if no assignment of the proceeds of the proposed policy be made by the beneficiary after death of the as-

sured, then the proceeds will be paid to the beneficiary as under the standard policy.

The benefit intended by the proposed policy is simply and exclusively a natural death benefit, identical to that of the approved standard policy.

The form of the proposed policy in all respects is identical or substantially so with respondent's standard policy. Respondent by the proposed policy contract will agree to pay the amount of the policy, as the natural death benefit, to the named beneficiary, upon death of the named assured. Clearly the proceeds of any policy under the natural death benefit plan, upon death of the assured, is payable to the named beneficiary, or to his order either by use of an assignment attached to the policy or by an extraneous assignment to be supplied,—in either instance an instrument enforceable by the assignee. Our attention has not been directed to any statute which, either directly or by implication, prohibits, or in anywise limits, the right of a designated beneficiary, to assign his interest in the policy under the facts shown in the present case; for here, the form of assignment attached to the proposed policy contemplates the beneficiary's exercise of the right of assignment only after the event of death of the assured, at a time when the beneficiary's interest no longer is an expectancy by virtue of the annual renewable term of respondent's insurance contracts, (I.C. § 41–3113), but when, by reason of the assured's death, the beneficiary's interest has become vested and absolute. 45 C.J.S. Insurance § 413, p. 38; 29 Am.Jur., Insurance, p. 404, sec. 494.

Appellant further contends that issuance of the proposed policy will destroy the principle of mutuality that must exist between members of a mutual benefit association. Appellant urges, in support of such contention, that benefits under the approved standard form of policy are paid to beneficiaries other than undertakers for purposes other than burial of the insured, while under the proposed policy the real beneficiary generally will be the undertaker for burial purposes.

Respondent shows however that appellant's argument is not applicable to the proposed policy, in that the beneficiary is not contemplated to be a person furnishing burial services. Respondent's undisputed statement of its position in that regard is: "That the evidence * * * and the policy form submitted both show that this policy will be issued as a straight life insurance policy, and that it can only be used for the payment of funeral benefits after the death of the member and then only if the beneficiary so elects, and makes an assignment accordingly. Furthermore, the proceeds of any life insurance policy ever issued by Gem State Mutual Life Association, Inc., can be transferred by assignment to anyone at the option of the beneficiary of such policy, and after the death of the insured."

■ The proposed policy will not constitute "burial insurance", which consists of a contract between an assured and one engaged in the undertaking business, whereby the latter, for a consideration, agrees to furnish burial services for the assured. Oklahoma Southwestern Burial Ass'n of Ardmore v. State, 135 Okl. 151, 274 P. 642, 63 A.L.R. 704; State ex rel. Fishback v. Globe Casket & Undertaking Co., 82 Wash. 124, 143 P. 878, L.R.A.1915B, 976; State ex rel. Landis v. De Witt C. Jones Co., 108 Fla. 613, 147 So. 230; South Georgia Funeral Homes v. Harrison, 182 Ga. 60, 184 S.E. 875; Annotations, 63 A.L.R. 723, 100 A.L.R. 1453, 119 A.L.R. 1243.

■■ The mutuality essential to a mutual benefit association consists of the reciprocal rights and obligations that exist between the members inter sese. Mutual Life Ins. Co. v. Phinney, 178 U.S. 327, 20 S.Ct. 906, 44 L.Ed. 1088, 1096; United Order of Foresters v. Miller, 178 Wis. 299, 190 N.W. 197, 29 A.L.R. 1526; Petition of Charlton Bros. Transp. Co., 181 Md. 253, 30 A.2d 538; Gaston v. Keehn, 69 Ga.App. 500, 26 S.E.2d 107; Fidelity Mut. Life Ins. Co. v. Sims, 140 W.Va. 49, 82 S.E.2d 312; Commonwealth ex rel. Chidsey v. Keystone Mut. Cas. Co., 366 Pa. 149, 76 A.2d 867; 29 Am.Jur., Insurance, p. 86, sec. 52; 38 Am. Jur., Mutual Benefit Societies, p. 529, sec. 120; 44 C.J.S. Insurance § 104, p. 644. Clearly, respondent's issuance of the proposed policy in accordance with its proposed plan will not interfere with the mutuality required to exist between its members.

■ The business of insurance is affected with a public interest and is subject to regulation by the state in the exercise of its police power. Gem State Mutual Life Insurance Ass'n, Inc., v. O'Connell, 79 Idaho 427, 320 P.2d 329, 331, but such regulation must be exercised in accordance with recognized rules, set forth in the aforesaid decision as follows:

"* * * a regulation abridging or restricting freedom of contract or the right to engage in any lawful business in a lawful manner must be reasonable and must reasonably tend to accomplish or promote the protection and welfare of the public. Regulations which are arbitrary or capricious and which unreasonably restrict or interfere with the liberties of the citizen, without accomplishing or promoting a legitimate object of the police power, are invalid violations of the fundamental law. State v. Finney, 65 Idaho 630, 150 P.2d 130; Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695; Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 P. 353.

* * * * * *

"The insurance code (Title 41, I.C.) creates the office of commissioner of insurance with broad powers to secure the effective administration of the insurance laws, and all of the regula-

tions contained therein are primarily intended to effect the protection of the people, and to promote their general welfare in relation to insurance. § 41–101, I.C. The police regulations therein contained must be so construed and applied by the commissioner as to attain that purpose, without unnecessary limitations upon the constitutional rights of the parties involved, and with a minimum interference with the free exercise of such rights. City of Twin Falls v. Harlan, 27 Idaho 769, 151 P. 1191; O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031; Carpenter v. Pacific Mut. Life Ins. Co. of California, 10 Cal.2d 307, 74 P.2d 761; National Automobile Underwriter's Ass'n v. Day, 348 Ill. App. 554, 109 N.E.2d 630."

The judgment of the district court is affirmed. Costs to respondent.

KEETON, C. J., and TAYLOR, J., concur.

McQUADE, Justice, with whom PORTER, Justice, concurs (dissenting).

Pursuant to Title 41, Chapter 31, Section 17, Idaho Code, the respondent, an Idaho corporation, made application to the commissioner of insurance, appellant herein, for approval of the insurance form entitled "$500.00 Funeral Benefit." After a hearing and an examination of the policy, the commissioner of insurance denied the application, from which order the respondents appealed to the district court, as provided by statute, and secured a reversal of the commissioner's ruling on the record taken by the commissioner. From the order of reversal entered by the district judge, the commissioner of insurance has appealed to this Court for a review of the record, and assigns as error that the trial judge erred in reversing the appellant.

The respondent is known as a mutual benefit life association, organized and existing under the provisions of Title 41, Chapter 31, Idaho Code, for the purpose of issuing a life insurance policy under a mutual benefit plan, and in compliance with our statutes. By virtue of statutory limitations, the respondent may issue only annual renewable term contracts. I.C. § 41–3113. The general limitation governing contracts of insurance is provided in I.C. § 41–3112, to wit:

"Every mutual benefit association organized under the provisions of this act for the principal purpose of providing insurance benefits upon the death, dismemberment or total and permanent disability of any member thereof shall be a mutual benefit life association and shall be limited to the payment of these benefits in the amount and as outlined in part two of this act."

Respondent issues policies under this authority in multiples of $100 up to a max-

imum of $3,000, provided that in the event the applicant is under the age of 50 years the limits of the policy may be extended to $5,000.

A mutual insurance corporation is a creature of the statutes of the State of Idaho, and its powers thereunder are derived from the power which conceived its inception, and it has only such powers as conferred by statute. Title 41, Chapter 31, Idaho Code; 38 Am.Jur., Mutual Benefit Societies, sec. 11, p. 451; sec. 28, p. 464; State ex rel. Taylor v. Beneficial Protective Association, 60 Idaho 587, 94 P.2d 787; National Union v. Keefe, 263 Ill. 453, 105 N.E. 319; Bankers' Union of the World v. Crawford, 67 Kan. 449, 73 P. 79; Carson v. Vicksburg Bank, 75 Miss. 167, 22 So. 1, 37 L.R.A. 559.

Insurance companies are subject to the regulation and control of the state within which they operate, under the authority of the police power of that state, on the theory that it is a matter of public interest. La Tourette v. McMaster, 248 U.S. 465, 39 S.C. 160, 63 L.Ed. 362.

It is admitted by the respondent that the policy to be issued is for all intents and purposes substantially the same as its standard policy, and that the premium which will be collected therefor is determined by the graded premium method, the same as the standard policy premium, and the respondent further points out that the proposed form complies with our statutes in

that the same benefit fund will be used for the subject policy as well as the standard renewable term policy. Further, the respondent contends the proposed form is payable only upon the death of the insured, to a designated beneficiary, as is required by I.C. § 41–3112.

On the other hand, the appellant points out the policy has a caption, "$500.00 Funeral Benefit," which denotes this policy is in fact different from the standard policy issued by respondent, and further urges the proposed form has attached to it an assignment form which is not included in the standard policy, and urges that a separate benefit fund would be required for these policies, which is contrary to statute. The attachment of an assignment form and the waiver of notice contained in the proposed form appear to be of small moment, and will not be considered herein, nor will the creation of a second benefit fund be discussed. However, under I.C. § 41–3117, the commissioner of insurance has the responsibility of examining all proposed policy forms to assure that such forms comply with the statutory requirements and the spirit thereof.

The proposed "Funeral Benefit" policy in effect being approved except for the caption thereof, we must then look to what authority the statute gives the corporation for the issuance of a policy being so entitled. Our statute appears to question the usage of certain terminology, one of which is I.C. § 41–3111(4), which is as follows:

"The words 'life insurance policy,' or any of these words, shall not be used in any public announcement or advertising medium describing the benefits to members, unless such description shall clearly state that such life insurance or policy is on the mutual benefit plan."

There are other provisions of this chapter which require the policies of mutual companies to meticulously describe the type of policy and type of benefit which is thereby procurable.

By enacting such restrictions, it appears the legislature had an avowed purpose in conferring discretionary power upon the commissioner of insurance to ascertain if the form of the policy might tend to mislead the purchasing public in the procurement of insurance. Most assuredly the Association will advertise and secure insured on the basis that the policy is for "funeral benefits" when in truth and in fact it is only another of the standard policies, wearing a different garment. Such advertising would then be contrary to the statutory authority, and a duty rests upon the insurance commissioner to protect the public from being misled thereby.

Being mindful of the public trust which rests upon the commissioner in approving these forms, he must take every precaution to protect the public from investing in a policy which carries with it a misconception as to its nature. In this instance, the policy is identical, for our purposes, with the respondent's standard provision policy, and should be so designated. When a proposition such as is before us is ventured, it is possible to dwell upon all types of hypothetical circumstances, language and conditions. We have before us, not an ordinary sale of products or services, as in commerce, but that of insurance upon lives. If there is any ambiguity, it must be resolved in favor of the public and against the respondent, as it occupies a position of trust and is thereby required to exercise a higher degree of care in its representations than is a merchant dealing in the ordinary course of commerce, where no position of trust prevails, and where the buyer and the seller deal at arm's length.

Although the subject matter was fire insurance, nevertheless this Court, even as to that type of coverage, announced the following principle in the case of Intermountain Lloyds v. Diefendorf, 51 Idaho 304, 5 P.2d 730, 731:

"The right to carry on the business of insurance in this state, as in most states, is carefully regulated by statute. It is quite generally held, and we hold that the public interest is so affected by the insurance business carried on in the state that private right of contract must be subjected to the police power of the state prescribing the terms and conditions on which it may be conducted and in regulating the

business and all who are engaged in it. \* \* \*"

During the hearing on the application to issue this policy, the commissioner of insurance stated that the caption, "$500.00 Funeral Benefit" could be misconstrued and could mislead the purchasers thereof.

This raises the question as to why the respondent desires to issue a policy in this proposed form. In the transcript there appears the following:

"Commissioner O'Connell: But the question is why is it necessary to issue this particular type of policy, you already have one you say.

"Mr. Christensen: I will let Mr. Allen explain the reason for it.

"Mr. Allen: There is no particular reason, the same—let's not say the same effect could be had by the issuance of any $500.00 policy. This policy is made up for convenience. It is made up for simplicity. It is dealing with one thing and one thing only. It isn't anything new. It is just a carrying on of the same things as we now do. We could issue one of our standard policies in the amount of $500.00 for the same premium that this little policy requires, and we could do that indefinitely, which would have no bearing on this policy or any other policy, and

by using this policy it is just merely a simple form, it has a specific purpose.

"Commissioner O'Connell: It is a different policy then.

"Mr. Allen: Certainly it is a different policy.

"Commissioner O'Connell: In other words, you are using two policy forms, for the same person."

Unquestionably, the foregoing testimony would not be a satisfactory basis nor explanation to warrant the approval of any insurance form, nor does it explain why the respondent wants to issue such a form policy. Being mindful of the legislative purposes expressed in Title 41, Chapter 31, Idaho Code, and it appearing that the commissioner of insurance differs with the well-experienced trial judge, we are led to the ultimate conclusion that the general public would undoubtedly be misled as to the nature of the policy. By the commissioner of insurance and the trial judge differing over the language, we have before us the very object lesson of the controversy. It must be concluded that the citizens of the State of Idaho should not be exposed to such problematically-captioned policies when persons of keen perception, learning, and wide experience are unable to agree.